**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANDREW JAMES MCGONIGLE, on behalf of himself and others similarly situated, | Case No. 1:25-cv-01674-SRH |
| | Hon. Sunil R. Harjani |
| Plaintiff, | Oral Argument Requested |
| | Electronically Submitted |
| v. | |
| TRANSFORM SR BRANDS LLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION
COMPLAINT OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**

**TABLE OF CONTENTS**

                                                                                                         **Page**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

ARGUMENT .......................................................................................................................... 4

      I.      LEGAL STANDARD ..................................................................................... 4

      II.     PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED ............. 5

            A.     Plaintiff's Cell Phone Is Not a Residential Device. .................................... 5

            B.     The Court Need Not Defer to FCC Guidance. ............................................ 9

            C.     The Court Should Dismiss the Amended Complaint with Prejudice. .................................................................................................. 10

      III.    IN THE ALTERNATIVE, THE COURT SHOULD STAY PROCEEDINGS ............................................................................................. 11

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................4

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  591 U.S. 610 (2020) .............................................................................................................7, 9

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ..................................................................................................4

*Brown v. Cook Cnty. Auditor's Off.*,
  No. 1:23-cv-10452, 2025 WL 933894 (N.D. Ill. Mar. 27, 2025) ...........................................11

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) ................................................................................................................7

*Cunningham v. Enagic USA, Inc.*,
  No. 3:15-cv-00847, 2017 WL 2719992 (M.D. Tenn. June 23, 2017) ......................................8

*Cunningham v. Politi*,
  No. 4:18-cv-00362, 2019 WL 2519702 (E.D. Tex. Apr. 26, 2019) .....................................5, 8

*Cunningham v. Spectrum Tax Relief LLC*,
  No. 3:16-cv-02283, 2017 WL 3222559 (M.D. Tenn. July 7, 2017) .........................................8

*Cunningham v. Sunshine Consulting Grp., LLC*,
  No. 3:16-cv-02921, 2018 WL 3496538 (M.D. Tenn. July 20, 2018) ...................................6, 8

*D'Ambrosio v. Rajala*,
  No. 1:24-cv-00678, 2025 WL 1383286 (N.D. Ill. May 13, 2025) .........................................10

*Facebook, Inc. v. Duguid*,
  592 U.S. 395 (2021) ................................................................................................................9

*Fauley v. Royal Canin U.S.A., Inc.*,
  No. 1:15-cv-02170, 2015 WL 3622542 (N.D. Ill. May 22, 2015) .........................................12

*Gaker v. Q3M Ins. Sols.*,
  No. 3:22-cv-00296, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) ..................................5, 6, 8

*Gorss Motels, Inc. v. Safemark Sys., LP*,
  931 F.3d 1094 (11th Cir. 2019) .............................................................................................10

*Hamdan v. Rumsfeld*,
　548 U.S. 557 (2006) ...................................................................................................................7

*Johnson v. Palmer Admin. Servs., Inc.*,
　No. 6:22-cv-00121, 2022 WL 17546957 (E.D. Tex. Oct. 20, 2022) ..........................................8

*Lavalais v. Vill. of Melrose Park*,
　734 F.3d 629 (7th Cir. 2013) .....................................................................................................4

*Loper Bright Enters. v. Raimondo*,
　603 U.S. 369 (2024) ............................................................................................................6, 10

*M&N Trading, LLC v. BofA Sec., Inc.*,
　No. 1:24-cv-01229, 2024 WL 4651857 (N.D. Ill. Nov. 1, 2024) ..............................................4

*Moore v. Triumph CSR Acquisition, LLC*,
　No. 1:23-cv-04659, 2023 WL 8601528 (N.D. Ill. Dec. 12, 2023) .................................. passim

*Morris v. Lincare, Inc.*,
　No. 8:22-cv-02048, 2023 WL 5336780 (M.D. Fla. Aug. 18, 2023) ........................................11

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
　588 U.S. 1 (2019) ................................................................................................................9, 10

*Perez v. Mortg. Bankers Ass'n*,
　575 U. S. 92 (2015) .................................................................................................................10

*Scherr v. Marriott Int'l, Inc.*,
　703 F.3d 1069 (7th Cir. 2013) ...................................................................................................8

*Shelton v. Fast Advance Funding, LLC*,
　378 F. Supp. 3d 356 (E.D. Pa. 2019) ....................................................................................6, 7

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
　464 U.S. 417 (1984) ..................................................................................................................9

*Soppet v. Enhanced Recovery Co., LLC*,
　679 F.3d 637 (7th Cir. 2012) .....................................................................................................6

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC*,
　No. 1:15-cv-05182, 2016 WL 47916 (N.D. Ill. Jan. 5, 2016) ..............................................4, 12

**Statutes**

28 U.S.C. § 2342 ............................................................................................................................9

47 U.S.C. § 227 ..............................................................................................................................5

**Other Authorities**

47 C.F.R. § 64.1200 ...................................................................................................................5

137 Cong. Rec. 30824 (1991) (statement of Sen. Bentsen)............................................................7

*McGonigle v. Alliance Ent., LLC*,
    No. 0:24-cv-62443, Dkt. 21 (S.D. Fla. May 6, 2025) .................................................................3

*McGonigle v. FTD, LLC*,
    No. 1:24-cv-12201, Dkt. 21 (N.D. Ill. Feb. 23, 2025) ................................................................3

*McGonigle v. Value City Furniture, Inc.*,
    No. 2:24-cv-04293, Dkt. 1 (S.D. Ohio Dec. 23, 2024) ..............................................................3

*McGonigle v. Zales Delaware Inc.*,
    No. 1:24-cv-01820, Dkt. 1 (E.D. Va. Oct. 15, 2024)..................................................................3

Webster's Third New Int'l Dictionary of the English Language Unabridged (1993) .....................6

*Schultz v. AMB Media, LLC*,
    No. 1:24-cv-04725, Dkt. 17 (N.D. Ga. Dec. 17, 2024) ............................................................12

*Shelton v. Pro Source Lending Grp. LLC*,
    No. 2:24-cv-04394, Dkt. 33 (E.D. Pa. Apr. 14, 2025)..............................................................12

Defendant Transform SR Brands LLC ("Defendant" or "Transform") hereby submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Andrew James McGonigle's ("Plaintiff") First Amended Class Action Complaint (the "Amended Complaint" or "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to Stay Proceedings.[1]

## INTRODUCTION

Plaintiff has been busy. After moving from Florida to Virginia, Plaintiff allegedly abandoned his old phone number and acquired a new cell phone number on August 5, 2024, through which its prior owner previously provided express consent to be contacted by numerous businesses. After receiving those text messages, rather than texting "STOP" to any of these numbers—as any reasonable person would know to do—or otherwise revoking the consent provided, Plaintiff instead filed class actions against nearly two dozen businesses. In fact, in the span of just a few months, Plaintiff filed *twenty-two* separate nationwide class action lawsuits in various federal courts against companies from Zales to Home Shopping Network to LG Electronics to a Virginia-based gym, each based on the same boilerplate allegations and theory concerning texts he received on his newly acquired number. In each case, Plaintiff hopes to pursue class-wide statutory damages of $500–$1,500 per text under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").[2]

---

[1] In his Amended Complaint, Plaintiff erroneously named "SR Holdings Management LLC" as the defendant. The Parties met and conferred and agreed that the proper party is Transform SR Brands LLC—i.e., the named defendant in the original Complaint and the only entity served—so Plaintiff filed a consent motion to substitute "Transform SR Brands LLC" as the defendant. (Dkt. 15.) The Court granted this motion on May 20, 2025. (Dkt. 16.) Therefore, Defendant construes all references to "Defendant" in the Amended Complaint to refer to Transform SR Brands LLC.

[2] *See McGonigle v. Bond No. 9*, No. 1:24-cv-01742 (E.D. Va., filed Oct. 1, 2024); *McGonigle v. Zales Delaware, Inc.*, No. 1:24-cv-01820 (E.D. Va., filed Oct. 15, 2024); *McGonigle v. Shopperschoice.Com, LLC*, No. 3:25-cv-00152 (M.D. La., filed Oct. 25, 2024); *McGonigle v. Filters Fast LLC*, No. 1:24-cv-02063 (E.D. Va., filed Nov. 19, 2024); *McGonigle v. HSN, Inc.*, No. 8:24-cv-02712 (M.D. Fla., filed Nov. 21, 2024);

Plaintiff's allegations here focus on eight (8) text messages he received from Transform, which is the company operating Sears-branded businesses. He asserts one cause of action under the TCPA, claiming that text messages from Sears.com were sent to Plaintiff's number without his consent while his number was on the National Do-Not-Call Registry ("DNC Registry"). However, Plaintiff's Amended Complaint fails as a matter of law because Plaintiff's cell phone number is not covered by the statutory provision that he claims was violated by Transform's transmission of Sears.com offers to his cellular phone. Indeed, Plaintiff's cell phone number is not a "residential" number restricted by Section 227(c) of the TCPA, and Plaintiff pleads no facts to the contrary.

Because Plaintiff fails to allege facts sufficient to establish that his cell phone is a residential line or to otherwise state a plausible claim under the TCPA, the Complaint should be dismissed. Further, because Plaintiff has already attempted to amend his claims and failed to allege any new facts to overcome this deficiency, his Complaint should be dismissed with prejudice.

Alternatively, to the extent the Court would like to see guidance from the Supreme Court regarding the weight due to the FCC's interpretation of the TCPA, Transform alternatively asks for a stay pending a US Supreme Court ruling that may be dispositive on this question.

---

*McGonigle v. Walker & Co. Brands, Inc.*, No. 1:24-cv-02140 (E.D. Va., filed Nov. 26, 2024);
*McGonigle v. FTD, LLC*, No. 1:24-cv-12201 (N.D. Ill., filed Nov. 26, 2024);
*McGonigle v. Midwest Catalog Brands LLC*, No. 3:24-cv-00864 (W.D. Wisc., filed Dec. 5, 2024);
*McGonigle v. Value City Furniture, Inc.*, No. 2:24-cv-04293 (S.D. Ohio, filed Dec. 23, 2024);
*McGonigle v. Alliance Entertainment, LLC*, No. 0:24-cv-62443 (S.D. Fla., filed Dec. 29, 2024);
*McGonigle v. Everyday Dose LLC*, No. 1:24-cv-25115 (S.D. Fla., filed Dec. 30, 2024);
*McGonigle v. LG Electronics USA*, No. 1:25-cv-02700 (D.N.J., filed Jan. 11, 2025);
*McGonigle v. D'artagnan, Inc.*, No. 1:25-cv-00052 (E.D. Va., filed Jan. 11, 2025);
*McGonigle v. Office Depot*, No. 9:25-cv-80069 (S.D. Fla., filed Jan. 17, 2025);
*McGonigle v. Perpay, Inc.*, No. 2:25-cv-00326 (E.D. Pa., filed Jan. 20, 2025);
*McGonigle v. Richmond Fitness, Inc.*, No. 1:25-cv-00103 (E.D. Va., filed Jan. 21, 2025);
*McGonigle v. Skull Shaver, LLC*, No. 1:25-cv-00424 (E.D. Va., filed Mar. 8, 2025);
*McGonigle v. Robbins Research Int'l, Inc.*, No. 1:25-cv-00800 (E.D. Va., filed May 8, 2025);
*McGonigle v. Teleflora LLC*, No. 1:25-cv-00807 (E.D. Va., filed May 9, 2025);
*McGonigle v. Telescents, Inc.*, No. 1:25-cv-00845 (E.D. Va., filed May 15, 2025);
*McGonigle v. Pure Green Franchise Corp.*, No. 0:25-cv-61164 (S.D. Fla., filed June 10, 2025).

## BACKGROUND

Plaintiff alleges that on August 5, 2024, he acquired the cell phone number (804) 238-XXXX (the "804 Number"). (FAC ¶ 8.) Plaintiff claims that he uses the 804 Number "as his personal residential telephone number," alleging that he uses it for appointments, to communicate with friends and family, and "other household purposes." (*Id.* ¶¶ 9–14.) Plaintiff alleges that he registered the 804 Number to the DNC Registry on August 5, 2024, the day he acquired the phone, even though he also alleges that the number had already been registered since 2014.[3] (*Id.* ¶ 15.)

After he acquired the 804 Number, Plaintiff alleges that Transform sent him several text messages offering him promotions to Sears.com. (*Id.* ¶ 17.) Specifically, Plaintiff claims he received at least eight text messages from Sears.com over two months, with messages on September 24 and 27, 2024, and October 2, 5, 8, and 11, 2024. (*Id.* ¶¶ 16, 18.) Plaintiff does not allege that he ever replied "STOP" to any messages he received on the phone he had acquired. Nevertheless, Plaintiff claims that the text messages caused him an "actual harm" as "an invasion of privacy, an intrusion into his life, and a private nuisance." (*Id.* ¶ 23.)

Other than amending his original complaint to erroneously name the wrong defendant (*see supra* footnote 1), Plaintiff made only one change to his complaint: he added four brief paragraphs alleging that he uses his cellular phone for personal use, that he does not have a landline, and that no business pays for his cellular plan. (*See* FAC ¶¶ 11–14.)[4] Plaintiff apparently believes that

---

[3] Elsewhere, Plaintiff alleges "[u]pon information and good faith belief" that Transform "knew, or should have known," that the 804 Number has been on the DNC Registry since "April 18, 2023," although he alleges no basis for this belief. (*Id.* ¶ 24.) The April 18, 2023 date appears in some, but not all, of Plaintiff's boilerplate TCPA complaints. *Compare, e.g., Zales*, Dkt. 1 ¶ 20 *and Value City Furniture*, Dkt. 1 ¶ 20, *with FTD*, Dkt. 21 ¶ 21 *and Alliance Ent.*, Dkt. 21 ¶ 25.

[4] Plaintiff did not, as required by the Court's local rules, attach a redline to his Amended Complaint showing the changes from the Complaint. For the Court's convenience, a redline showing the handful of additional allegations is attached hereto as Exhibit A.

such allegations transform him into a "residential telephone subscriber" as that term was defined by Congress when enacting the TCPA in 1991. However, as further discussed below, cellular phones existed in 1991 and were not included in the TCPA's Do Not Call restrictions for residential phones; Congress has had decades to change the TCPA and its definition of "residential telephone subscriber" and has not done so. The FAC should be dismissed for the reasons detailed below.

## ARGUMENT

### I. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleadings include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When determining whether a claim is plausible on its face, the facts pleaded in the complaint are taken as true, and all reasonable inferences are drawn in plaintiff's favor. *See Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). However, "courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *see also M&N Trading, LLC v. BofA Sec., Inc.*, No. 1:24-cv-01229, 2024 WL 4651857, at *1 (N.D. Ill. Nov. 1, 2024) (Harjani, J.) ("[A] complaint must consist of more than 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" (quoting *Iqbal*, 556 U.S. at 678)).

As to the alternative motion to stay, the power to stay proceedings is inherent in courts "to control the disposition of cases on its docket with economy of time and effort for itself, for counsel and for litigants." *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 1:15-cv-05182, 2016 WL 47916, at *2 (N.D. Ill. Jan. 5, 2016) (internal quotes omitted).

## II. PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED

Plaintiff's claim under the TCPA fails as a matter of law. Section 227(c) provides a private right of action for persons who have received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations" prescribed under Section 227(c) of the TCPA. 47 U.S.C. § 227(c)(5). The corresponding federal regulation is 47 C.F.R. § 64.1200(c), which provides: "No person or entity shall initiate any telephone solicitation to . . . **[a] residential telephone subscriber** who has registered his or her telephone number on the [DNC Registry]." 47 C.F.R. § 64.1200(c)(2) (emphasis added).

Here, Plaintiff's claim centers on texts allegedly sent to his cell phone, and "[a] cellular phone and a residential phone are not the same thing." *Moore v. Triumph CSR Acquisition, LLC*, No. 1:23-cv-04659, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023); *accord Gaker v. Q3M Ins. Sols.*, No. 3:22-cv-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023). Plaintiff's new assertions that he uses his cellular phone to conduct his personal business does not transform that device into a "residential" line so as to support a private right of action lawsuit brought under Section 227(c). Because Plaintiff cannot plausibly allege that he is a "residential telephone subscriber" under the TCPA in regards to his cellular phone number, his claim should therefore be dismissed.

### A. Plaintiff's Cell Phone Is Not a Residential Device.

Section 227(c) of the TCPA's private right of action is "limited to redress for violations of the regulations that concern residential telephone subscribers." *Cunningham v. Politi*, No. 4:18-cv-00362, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019), *report and recommendation adopted*, 2019 WL 2526536 (E.D. Tex. June 19, 2019). But the 804 Number does not fall under this section, as the TCPA's text and structure distinguish "residential" phones from cell phones.

5

*First*, the plain text of the TCPA shows that it does not apply to cell phones. "[T]he language of the TCPA specifically provides that the regulations implemented pursuant to Subsection 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights.'" *Cunningham v. Sunshine Consulting Grp., LLC*, No. 3:16-cv-02921, 2018 WL 3496538, at \*6 (M.D. Tenn. July 20, 2018) (quoting 47 U.S.C. § 227(c)(1)), *report and recommendation adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018). "Cell phones do not present the same concerns as residential phones," as their "mobility and functionality to silence or decline calls alleviate the concerns inherent with a home telephone." *Gaker*, 2023 WL 2472649, at \*3. In contrast, "a residential phone is a home phone that is hard-wired into the building. It means a landline. It is *residential* in a very literal sense." *Moore*, 2023 WL 8601528, at \*2.

Indeed, at the time the TCPA was enacted in 1991, the term "residential" meant being "adapted or restricted to or occupied by residences" or "of, relating to, or connected with residence or residences." *Residential*, Webster's Third New Int'l Dictionary of the English Language Unabridged (1993). Under the plain text chosen by Congress, therefore, a "residential telephone" is "a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere." *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019) (quoting Merriam-Webster). By limiting Section 227(c) to "residential" telephones (even while addressing cellular phones in other sections of the TCPA), Congress intended Section 227(c) to be limited to not include cell phones; "[t]hat is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (internal quotes omitted); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012) ("Legislation means today what it meant when enacted.").

***Second*,** the structure of the TCPA shows that Congress did not intend the Do-Not-Call Provision to apply to cell phones. When courts interpret statutory text, "a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). Here, "the TCPA specifically mentions 'cellular telephone service' in § 227(b) and § 64.1200(a)(1)(iii), indicating that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d)." *Shelton*, 378 F. Supp. 3d at 362 n.7. And this was no accident: Congress expressly considered the interests unique to cell phones when it enumerated "cellular" telephones in Section 227(b). *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 648 (2020) (Gorsuch, J., concurring) (explaining that Congress banned robocalls to cell phones "to address the problem" caused by "many cell phone users ha[ving] to pay for each call"). A co-sponsor of the TCPA also differentiated between "unsolicited automated calls to the home" and "automated calls to . . . cellular telephones." 137 Cong. Rec. 30824 (1991) (statement of Sen. Bentsen). Had Congress intended for Section 227(c) to apply to cell phones, it could have done so. It did not, and "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

A court in this District recently applied a similar analysis to distinguish a cell phone from a residential phone. *Moore*, 2023 WL 8601528, at *2. In that case, the plaintiff sued under TCPA Section 227(b)(1)(B) for the alleged use of automatic dialing equipment for calls sent to her cell phone. *Id.* at *1. In granting the defendant's motion to dismiss, the Court explained that the TCPA's use of "residential telephone line" and "cellular telephone service" in close proximity to one another "is a strong clue that the two terms do not mean the same thing." *Id.* at *2. It further

7

analyzed the term "residential" as it was understood in "common parlance and natural usage." *Id.* at *3. Under both this textual and structural analyses, the result is the same: "[a] cell phone is not a residential phone," and "any [texts] to a cell phone cannot violate" Section 227(c). *See id.*

Other courts have also found Congress's distinction between "residential" and non-residential devices to be significant. Indeed, the "majority of the persuasive precedent" under the TCPA found that the term "residential telephone" does not include cell phones. *Johnson v. Palmer Admin. Servs., Inc.*, No. 6:22-cv-00121, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022), *report and recommendation adopted*, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022) (discussing the meaning of "residential telephone subscriber" under 47 C.F.R. § 64.1200(d)); *see also Moore*, 2023 WL 8601528, at *2 (finding that "courts widely hold that a cell phone is not a 'residential telephone line'" under Section 227(b) and collecting cases). The same is true for the do-not-call provision, under which courts regularly find that Section 227(c)'s limitation to only residential telephone subscribers excludes complaints where "Plaintiff alleges only the use of his cellular phone[]." *Politi*, 2019 WL 2519702, at *4 (collecting cases); *see also Gaker*, 2023 WL 2472649, at *3; *Sunshine Consulting Grp.*, 2018 WL 3496538, at *6; *Cunningham v. Spectrum Tax Relief LLC*, No. 3:16-cv-02283, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017); *Cunningham v. Enagic USA, Inc.*, No. 3:15-cv-00847, 2017 WL 2719992, at *6 (M.D. Tenn. June 23, 2017).

*Third,* in addition to the plain text and structure of the TCPA, a common sense interpretation of the statute further counsels that Plaintiff's cell phone is not a residential device as that term is used in the TCPA. When interpreting statutory text without a definition, Courts should "construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077 (7th Cir. 2013) (internal quotes omitted). Here, as discussed above, Congress distinguished

"residential" devices and "cellular" devices in other sections of the TCPA. *E.g.*, *Barr*, 591 U.S. at 617 n.3 (acknowledging the separate restrictions for cell phones and residential phones). Under every mode of statutory construction, these are two separate terms. Should the Court interpret "residential" to broadly include cell phones as Plaintiff suggests, it would render this distinction superfluous and fundamentally rewrite the statute.

The Court should therefore accept the TCPA's plain meaning, and dismiss Plaintiff's claim because in complaining about texts sent to his cellular phone, he fails to allege that prohibited communications were sent to a residential telephone line.

### B. The Court Need Not Defer to FCC Guidance.

Plaintiff alleges that cell phone numbers placed on the DNC Registry are residential, directing the Court to FCC guidance from 2003. (FAC ¶ 54.) But construing the 804 Number as "residential" based solely on the FCC's say-so would contravene "the clear commands of [the TCPA's] text and the statutory context." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 406 (2021). As discussed above, Congress created specific provisions of the TCPA to apply only to cellular devices, but only enumerated the section containing the Do-Not-Call provision as applying to "residential telephones." (*See supra* Section II.A.) Unless Congress amends the TCPA to account for cellular devices with numbers registered to the DNC Registry, "it is not [the Court's] job to apply laws that have not yet been written." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 456 (1984). Given this clear statutory directive from Congress, the Court should not defer to the FCC's interpretations of the TCPA.

To the extent Plaintiff relies on the Hobbs Act to bind the Court to the FCC's interpretation of the scope of the Do-Not-Call provisions, that Act would also not require strict deference to the FCC. The Hobbs Act merely provides appellate courts with exclusive jurisdiction to "determine the validity of" FCC orders. *See* 28 U.S.C. § 2342; *PDR Network, LLC v. Carlton & Harris*

9

*Chiropractic, Inc.*, 588 U.S. 1, 3 (2019). This is not an action to determine the validity of the FCC's order; this is a dispute between two private parties about the TCPA's interpretation. *PDR Network*, 588 U.S. at 9 (Thomas, J., concurring). When applied correctly, the Hobbs Act "does not require district courts adjudicating cases within their ordinary jurisdiction to treat agency orders that interpret federal statutes as binding precedent." *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1106 (11th Cir. 2019) (Pryor, J., concurring). Rather, "the judicial power, as originally understood, requires a court to exercise its independent judgment in interpreting and expounding upon the laws." *Perez v. Mortg. Bankers Ass'n*, 575 U. S. 92, 119 (2015) (Thomas, J., concurring). Thus, where the FCC's interpretation of the TCPA is mistaken—even if in a valid order—the Hobbs Act does not preclude the Court from conducting its own independent analysis of the TCPA and "decid[ing] what the statute means under the usual principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *PDR Network*, 588 U.S. at 22 (Kavanaugh, J., concurring).

Further, as the Supreme Court held, "courts need not . . . defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright*, 603 U.S. at 412; *see also id.* at 400–01 ("[A]gencies have no special competence in resolving statutory ambiguities. Courts do."). Congress set clear limits for the TCPA, and the FCC may not enlarge those limits in ways that contradict the statutory text. Once the Court performs its own analysis of the TCPA, the result is plain: the texts Plaintiff allegedly received on his cell phone are not covered by Section 227(c).

### C. The Court Should Dismiss the Amended Complaint with Prejudice.

Because Plaintiff cannot allege facts sufficient to establish that he is a residential telephone subscriber under the TCPA, further amendment to his Amended Complaint would be futile. *D'Ambrosio v. Rajala*, No. 1:24-cv-00678, 2025 WL 1383286, at *16 (N.D. Ill. May 13, 2025) (Harjani, J.) (denying leave to amend where amendment was futile). This is particularly so where,

as here, the plaintiff was made aware of the deficiencies in their original complaint but made no effort to address them. *Brown v. Cook Cnty. Auditor's Off.*, No. 1:23-cv-10452, 2025 WL 933894, at *2 (N.D. Ill. Mar. 27, 2025) (dismissing an amended complaint with prejudice where, "[h]aving been granted an opportunity to cure the original complaint's deficiencies, Plaintiff undertook hardly any substantive amendments."). Here, in response to Defendant's Motion to Dismiss, Plaintiff amended his complaint as of right. But outside of changing the named defendant, Plaintiff only added four paragraphs of allegations. (FAC ¶¶ 11-14; *see also* Wahlquist Decl. Ex. A.)

These allegations do nothing to address the gravamen of Defendant's motions to dismiss: even if Plaintiff "practically [took] up residence on [his] cell phone[]," it would still not be enough because "even the strongest addiction to a cell phone cannot transform it into a residential phone." *Moore*, 2023 WL 8601528, at *2. Thus, even though Plaintiff purports to add minimal allegations that he "uses [his] cell phone as a residential line, the statute and case law make clear they are not one in the same." *Morris v. Lincare, Inc.*, No. 8:22-cv-02048, 2023 WL 5336780, at *4 (M.D. Fla. Aug. 18, 2023). Given this fatal flaw in the Amended Complaint that cannot be remedied by further amendment, the Court should dismiss Plaintiff's claims with prejudice.

## III. IN THE ALTERNATIVE, THE COURT SHOULD STAY PROCEEDINGS

This term, the Supreme Court granted certiorari in *McLaughlin Chiropractic Associates v. McKesson Corp.*, No. 23-1226, in which the question presented asked the Supreme Court to resolve "[w]hether the Hobbs Act required the district court in this case to accept the FCC's legal interpretation of the Telephone Consumer Protection Act."

Oral argument was heard on January 21, 2025, and a decision will be issued by the end of this term. To the extent that the Parties dispute the effect of the FCC's 2003 Order and the Court seeks further direction as to the governance of the Hobbs Act in TCPA cases, the Court has the discretion to stay this litigation and a determination on this Motion until after the Supreme Court's

11

forthcoming opinion issues. *See Tel. Sci. Corp.*, 2016 WL 47916, at *5 (staying a TCPA case while the Supreme Court considers a potentially relevant issue); *Fauley v. Royal Canin U.S.A., Inc.*, No. 1:15-cv-02170, 2015 WL 3622542 (N.D. Ill. May 22, 2015) (same).

Indeed, several other courts recently stayed TCPA case proceedings pending the Supreme Court's forthcoming decision in *McLaughlin*. *See, e.g., Shelton v. Pro Source Lending Grp. LLC*, No. 2:24-cv-04394, Dkt. 33 (E.D. Pa. Apr. 14, 2025) ("Even if *McLaughlin* is not dispositive in the present matter, it may materially impact the district court's analysis. Further, the Court is persuaded by Defendants' briefing that the *Landis* factors support a stay." (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 254–55 (1936))); *Schultz v. AMB Media, LLC,* No. 1:24-cv-04725, Dkt. 17 (N.D. Ga. Dec. 17, 2024) ("[T]he Supreme Court's decision should be issued by Summer 2025 and [] the decision will shed light on the issues raised in the Motion to Dismiss.").

While Transform believes that the Court can and should dismiss Plaintiff's Amended Complaint for the reasons detailed above, if the Court would like to wait for the Supreme Court's guidance on the question of Hobbs Act in the context of the TCPA, a stay pending that ruling (and the parties' report on the impact of that ruling) would be the appropriate course at this time.

## CONCLUSION

For the reasons set forth above, Transform respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice.

Alternatively, Transform asks the Court to stay this litigation until after the Supreme Court issues its ruling in *McLaughlin Chiropractic Associates v. McKesson Corp.*, No 23-1226, and the parties have been able to report to the Court regarding the Supreme Court's ruling and its impact on this Motion.

Dated: June 10, 2025     Respectfully submitted,

By: */s/ Becca J. Wahlquist*
 Becca J. Wahlquist
 Kelley Drye & Warren LLP
 350 South Grand Avenue, Suite 3800
 Los Angeles, CA 90071
 Telephone: (213) 547-4900
 bwahlquist@kelleydrye.com

 Gregory T. Berman
 Kelley Drye & Warren LLP
 3 World Trade Center
 175 Greenwich Street
 New York, NY 10007
 Telephone: (212) 808-7800
 gberman@kelleydrye.com

 *Attorneys for Defendant*