UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW JAMES MCGONIGLE, *on behalf of himself and others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> TRANSFORM SR BRANDS LLC <br><br> Defendant. | Civil Action No.: 1:25-cv-01674 |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR STAY**

The Court should deny the Defendant Transform SR Brands LLC's ("Transform") motion in total.

*First*, as alleged in Plaintiff's First Amended Class Action Complaint (ECF No. 13), Plaintiff is a residential subscriber of his cellular telephone number because he uses his cellular phone number exclusively for personal and household purposes. Plaintiff's cellular telephone number is his only telephone number and is his residential telephone line.

*Second*, residential subscribers of cellular telephone numbers are entitled to the protections of the Telephone Consumer Protection Act's National Do Not Call Registry provision under the statute's plain language because the TCPA protects "residential telephone *subscriber[s]*"—not simply "residential phones", *see, e.g.,* Memo, ECF 19 at 10-14—and the term "residential telephone *subscriber*" encompasses all types of telephone lines and devices (landline and cellular) so long as they are used for personal purposes. And the Court can reach this conclusion based on the TCPA's plain text, without deferring to the FCC.

*Finally,* there is no basis to stay the case pending the Supreme Court's Decision in *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*, et al, No. 23-1226 because the Supreme Court ruled in that case on June 21, 2025. *See* Exhibit 1. Notably, the Supreme Court's ruling does not impact the Plaintiff's arguments, which are all based on the plain text of the statute and

1

regulations promulgated pursuant to an express grant of Congressional authority. *See Seven Cty. Infrastructure Coal. v. Eagle Cty.*, 145 S. Ct. 1497 (2025) ("But when an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard. Under that standard, a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained."); *Chennette v. Porch.Com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022) ("Section 227(c) of the TCPA directs the FCC to promulgate regulations under which 'residential subscribers' may request that their telephone numbers be included in a national do-not-call registry and database, and to prohibit telephone solicitation to 'any subscriber included in such database.' 47 U.S.C. § 227(c)(3)(F). … FCC regulations protecting residential subscribers 'are applicable to any person or entity making telephone solicitations or telemarketing calls to *wireless* telephone numbers ….' 47 C.F.R. § 64.1200(e) (emphasis added). In the view of the FCC, … 'it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections,' and 'wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones.'").

## BACKGROUND

Plaintiff obtained his cell phone on August 5, 2024 and confirmed its registration with the National DNC Registry that same day. *See* First Amended Complaint, ECF No. 13, at ¶¶ 8, 15. Plaintiff obtained that phone number because he moved from Florida to Virginia. *Id*. Plaintiff does not have a landline telephone number or any other phone number. *Id.* at ¶ 11. He does not use his phone for business purposes, but instead uses his cellular phone number primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes. *Id.* at ¶¶ 10, 13. Plaintiff personally pays for his cell phone plan; it is not reimbursed by a business. *Id.* at ¶ 14.

After Plaintiff obtained his cell phone number, he received at least six solicitation text messages from Defendant. *Id.* at ¶ 18. The text messages were sent from September 24 to October 11, 2024, more than thirty-one days after Plaintiff's number was registered with the DNC Registry.

2

*Id.* at ¶ 17. Each message advertised the Defendant's business, including links to shop Defendant's website for home appliances. *Id.* at ¶ 20. Plaintiff did not give Defendant prior express consent to send him these text messages nor did he request this information. In fact, Plaintiff had no prior relationship with the Defendant. This is not disputed.

While the text messages were intended for someone other than, and unknown to, Plaintiff, Defendant knew, or should have known, that Plaintiff's number had been reassigned and was registered with the National DNC Registry. *Id.* at ¶ 19; 24. Defendant knowingly chose not to subscribe to the FCC's Reassigned Number Database, which would have allowed it to avoid making telemarketing calls to reassigned telephone numbers, especially those on the DNC registry. Indeed, calling the new owner of a phone number based on the prior owner's provisioning of a phone number is a violation of the Telephone Consumer Protection Act. *See, e.g., N. L. v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) ("Credit One's intent to call a customer who had consented to its calls does not exempt Credit One from liability under the TCPA when it calls someone else who did not consent.").

And as a result of the harm Plaintiff has suffered from Defendant's text messages, Plaintiff has filed this suit. *See* First Amended Complaint at ¶ 23.

## ARGUMENT

### Plaintiff Sufficiently Alleges that He is a Residential Subscriber

Plaintiff McGonigle sufficiently alleges that he is a residential subscriber of his cellular telephone number entitling him to the protections of the Telephone Consumer Protection Act's National Do Not Call Registry provision by alleging the facts and circumstances demonstrating that he uses his cellular telephone number exclusively for personal and household purposes. *Compare Gill v. Align Tech., Inc.*, 2022 U.S. Dist. LEXIS 87464, *8 (E.D. Wisc. May 16, 2022) ("Plaintiff's allegations that her wireless phone is a non-business, personal use phone that is registered on the do-not-call list is sufficient to allege that the phone was residential use.") *with Hicks v. Alarm.com Inc.*, No. 1:20-cv-532, 2020 U.S. Dist. LEXIS 157433, at *12 (E.D. Va. Aug. 6, 2020) ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do

3

Not Call registry—which appears to be undisputed—but his argument never returns to the facts of this case or the use of his phone. Perhaps easily addressed by amendment, this is another example of inadequate factual support for Plaintiff's claims."); *see Noviello v. Holloway Funding Grp.*, No. 3:22-cv-52-BN, 2023 U.S. Dist. LEXIS 3060, at *12-13 (N.D. Tex. Jan. 9, 2023) (citing *Hunsinger v. Alpha Cash Buyers LLC, No. 3:21-cv-1598-D*, 2022 U.S. Dist. LEXIS 32319, 2022 WL 562761 at *2 (N.D. Tex. Feb. 24, 2022): "'[C]ourts have held that cellular telephones can qualify as residential telephones, so long as a plaintiff pleads that the cellular telephone is used for residential purposes.'").

Specifically, after moving from Florida to Virginia, on August 5, 2024, Plaintiff McGonigle obtained a Virginia cellular telephone number that, when he immediate went to personally register it on the National Do Not Call Registry, he determined was already registered on the National Do Not Call Registry. *See* First Amended Complaint at ¶¶ 8-16. Since being assigned the new Virginia cellular telephone number:

- Plaintiff McGonigle has been the regular and sole user of this number.
- Plaintiff McGonigle has used this number as his personal residential telephone number.
- Plaintiff McGonigle has not used this number for business or commercial purposes or in any business or marketing materials.
- Plaintiff McGonigle has not had a landline telephone number in his home or any other telephone number.
- Plaintiff McGonigle has used his cellular phone number for personal use only as one would use a landline telephone number in a home.
- Plaintiff McGonigle has used this number primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes.
- Plaintiff McGonigle has personally paid for his cell phone plan, and has not reimbursed by a business.

*See id*.

Notwithstanding, despite Plaintiff McGonigle never consenting to receive telemarketing text messages from Defendant, and his number being registered on the National Do Not Call Registry, months after the Virginia telephone number was reassigned to Plaintiff, Defendant sent

4

a series of unsolicited telemarketing text messages promoting its products to Plaintiff. *See id*. at ¶¶ 17.

Given the transient nature of cellular telephone numbers, in 2018, the FCC established the Reassigned Number Database, which went online in 2021, to insulate companies like Defendant from liability for violating the TCPA by allowing them to determine whether a telephone number they intend to contact has been reassigned to someone who has not previously consented to be contacted by them. *See In re Advanced Methods to Target & Eliminate Unlawful Robocalls*, 33 FCC Rcd 12024 (F.C.C. Dec. 13, 2018). However, Defendant (and each of the other companies Plaintiff has sued under the TCPA) failed to use the Reassigned Number Database, resulting in its TCPA violative text messages to Plaintiff. *See* First Amended Complaint at ¶ 25 ("Additionally, Defendant knowingly chose not to subscribe the FCC's Reassigned Number Database, which is a database of telephone numbers for companies to use to avoid making telemarketing calls to reassigned telephone numbers, including specifically those registered with the DNC Registry.").

As a result of its failure to abide by the FCC's directive in these circumstances, Defendant now tries to shift the blame and burden on Plaintiff simply because Plaintiff moved to Virginia, gave up his prior non-Virginia telephone number, and obtained a new local one, resulting in a barrage of unwanted solicitations. This is patently absurd, and the fact that Plaintiff has chosen to exercise his rights under a federal statute designed to both protect him--and at the same time provide Defendant a simple and straightforward means for avoiding liability in precisely these circumstances (which Defendant intentionally failed to avail itself of)—does not convert Plaintiff's residential number into a business one. No court has ever found as much, nor will it. *Compare Katz v. Liberty Power Corp., LLC*, No. 1:18-cv-10506-ADB, 2019 U.S. Dist. LEXIS 162793, at *30 (D. Mass. Sep. 24, 2019) (explaining that a consumer is within the TCPA's zone of interest unless he maintained the number called by the defendant solely for "attracting … calls to support his TCPA lawsuits") *with Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 788-89 (W.D. Pa. 2016), in which, at summary judgment, a TCPA plaintiff was found to lack standing where she testified her sole purpose for owning over 35 cell phones was to run what she referred to as a TCPA

litigation business, and that these 35 cell phones were used only to collect telemarketing calls and were not called by anyone else for any other purpose.

As a result, the fact that, Plaintiff McGonigle has received a number of TCPA violative calls and texts from various companies that failed to take the steps that are readily available to them to avoid contacting people who have not agreed to be contacted in these situations and filed suits against them, as he has done here, does not alter the only reasonable conclusion to be drawn from Plaintiff's allegations—that he is a residential subscriber of his cellular telephone number. *See, e.g., Moore v. Club Exploria, LLC*, No. 19 C 2504, 2023 U.S. Dist. LEXIS 144183, at *18 (N.D. Ill. Aug. 17, 2023) ("However, the Seventh Circuit has said that frequent litigators may be better able to manage the litigation, so that is not a disqualification. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006). All Moore did was answer the telephone when the telemarketer called him. He did not entrap anyone. He did not create the violation.").

**Cellular Telephone Numbers are Protected under National Do Not Call Registry Provision**

Cellular telephone numbers are entitled to the protections of the TCPA's National Do Not Call Registry provision. Even ignoring the FCC's interpretations, all the "district courts that have considered this issue post-*Loper* [*Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)] have reached the same conclusion: cellular telephone users can be considered 'residential telephone subscribers' under § 227(c). *See Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 739 F. Supp. 3d 195, 2024 U.S. Dist. LEXIS 117544, 2024 WL 3293628, at *9 (S.D.N.Y. July 3, 2024) ('The Court therefore rejects Defendant's contention that Plaintiff falls outside the TCPA's protective ambit merely because he received the challenged calls on his cellphone.'); *Lyman v. Quinstreet, Inc.*, No. 23-CV-05056-PCP, 2024 U.S. Dist. LEXIS 123132, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024) ('the statutory text does not support [Defendant's] position, and instead is best read to include at least some cellular phone subscribers within the category of *residential telephone subscribers*')." *See Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-cv-02087, 2024 U.S. Dist. LEXIS 165900, at *14-19 (N.D. Ohio Sep. 16, 2024); *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676, at *11 (M.D.N.C. Aug. 12, 2024)

("Third, this approach is consistent with the applicable regulatory provisions and FCC interpretation. In this regard, the statutory language of 47 U.S.C. § 227 does not explicitly preclude a cell phone from being considered a 'residential telephone.' … Further, the private right of action created under 47 U.S.C. § 227(c)(5) of the TCPA is premised on a 'violation of the regulations prescribed under this subsection.' As relevant here, subsections (c)(2) and (d) of those regulations prohibit an entity from calling a person on the national Do-Not-Call registry or on the entity's internal do-not-call list, respectively. Those same regulations also unambiguously state that the rules set forth in these subsections 'are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*.' 47 C.F.R. § 64.1200(e).").

This is because the TCPA's National Do Not Call Registry provision "provides protections to a certain type of phone user, regardless of the technology." *Lirones*, 2024 U.S. Dist. LEXIS 165900, at *14-19; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024) ("The best reading of the word 'residential' is not that it modifies the 'telephone,' but rather that 'residential' and 'telephone' both modify the 'subscriber.' So instead of describing a 'subscriber' who owns a 'residential telephone,' Section 227(c)(1) describes a 'telephone subscriber' who has subscribed for 'residential,' i.e., personal, purposes. 'Residential' is therefore used in the broader sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.").

"Cellular telephones . . . are a kind of telephonic communications technology. A 'residential subscriber,' by contrast, does not refer to the specific phone technology, but to the type or identity of the subscriber to the technology. Thus, a 'residential subscriber' and a cellular telephone are not members of the same genus." *Lirones*, 2024 U.S. Dist. LEXIS 165900, at *14-19.

7

"The inclusion of the term 'cellular telephone' in § 227(b) and its exclusion from § 227(c) does not indicate that Congress intentionally omitted cellular telephones from § 227(c)'s protections; 'Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a *residential telephone line*, as Congress used that term in the preceding subsection.'" *Id*. "If the term *residential* referred to the telephone technology, then 'Congress's reference to a residential telephone *line* [in § 227(b)] would be surplusage, as a residential telephone would necessarily be a landline instead of a cellphone.'" *Id*.; *cf. Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 U.S. Dist. LEXIS 125001, at *3-9 (W.D. Va. July 25, 2018) (finding that under § 227(b)(1), "the structure and language of the TCPA demonstrate that calls made to a cell phone are not calls made to a 'residential telephone line'").

"Furthermore, according to the TCPA's plain language and dictionary definitions of 'residence' and 'subscriber,' 'a residential subscriber is one who maintains a phone for residential purposes . . . i.e., for personal activities associated with his or her private, domestic life.'" *Lirones*, 2024 U.S. Dist. LEXIS 165900, at *14-19.

Accordingly, "based on the text of the statute and tools of statutory interpretation, the Court [should] reach the same conclusion in the absence of any FCC interpretation of the term 'residential subscriber'—that Plaintiff McGonigle's allegations supporting the conclusion that he is a residential subscriber of his cellular telephone number "satisfy both the plain text of the TCPA and the FCC's regulations". *Id*.

The cases relied upon by the Defendant do not alter this analysis.

For example, in *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356 (E.D. Pa. 2019), the court granted judgment in favor of the plaintiff on his claim under the TCPA's National Do Not Call Registry provision for calls to his cellular telephone number. Only in dicta did it note that the defendant could have perhaps challenged whether the plaintiff was a "residential telephone subscriber"—and this suggestion was based exclusively on a misreading of the plain text of the TCPA as limiting claims to a residential *devices* and not residential *subscribers*. *Id*. at n.7 ("the

8

plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere"); *see also Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296-RJC-DSC, 2023 U.S. Dist. LEXIS 44919, at *7-8 (W.D.N.C. Feb. 7, 2023) (cited in Defendant's motion) (relying on *Salcedo v. Hanna*, 936 F.3d 1162, 1168-69 (11th Cir. 2019), which was overturned by the Eleventh Circuit in *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023), and explaining, "Cell phones do not present the same concerns as residential telephones."); *Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 U.S. Dist. LEXIS 102545, at *10 (E.D. Tex. Apr. 26, 2019) (cited in Defendant's motion) (report and recommendation recommending dismissal of the plaintiff's claim based on failure to plead other necessary elements, noting that "Recent courts considering claims asserted by Plaintiff have found § 227(c)(5) does not encompass Plaintiff's cellular phones and have dismissed his claims", but failing to rule on the issue).

And this conclusion is underscored by Judge Seeger's analysis in *Moore v. Triumph CSR Acquisition, LLC*, No. 23-cv-4659, 2023 U.S. Dist. LEXIS 220876 (N.D. Ill. Dec. 12, 2023), in which the court interpreted a different provision of the TCPA to find that a "residential telephone line" and "cellular telephone service" are not the same thing. *Id*. at *3-6 ("Moore has no claim under subsection 227(b)(1)(B) based on calls to her cell phone, because that provision applies only to a 'residential telephone line.' … A neighboring provision, subsection 227(b)(1)(A)(iii), expressly covers 'cellular telephone service,' but subsection 227(b)(1)(B) does not. … A cellular phone and a residential phone are not the same thing. … Courts widely hold that a cell phone is not a "residential telephone line" within the meaning of subsection 227(b)(1)(B)"). Here, the TCPA provision at issue does not limit claims based on the type of *device* or *line* to which calls are made, and instead expressly protects *subscribers*.

Ultimately, as one Court put it, addressing a similar motion: "even if the FCC's ruling is not entitled to deference, an independent analysis reveals that the agency got it right." *Abboud v. Lotta Dough, LLC*, No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547, *3 (W.D. Tex. Feb. 27, 2025). This Court can—and should—follow suit.

9

**The Motion to Stay is Moot because the Supreme Court Already Ruled and the Only Decision Issued Following the Supreme Court's Decision Supports the Plaintiff's Position**

The Supreme Court's Decision in *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*, et al. was entered on June 21, 2025. *See* Exhibit 1. As such, no stay is necessary. That decision only cements the Plaintiff's arguments above, which relies on a textualist reading of the TCPA. However, the Supreme Court's Decision also directs that federal courts should "afford[] appropriate respect" to prior FCC Orders on TCPA issues:

> The District Court is not bound by the FCC's interpretation of the TCPA. The District Court should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.

*Id.* at *27. The FCC has long-entered Orders that support the Plaintiff's positions here.

FCC regulations protecting residential subscribers "are applicable to any person or entity making telephone solicitations or telemarketing calls to *wireless* telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991' [('2003 TCPA Order')]." 47 C.F.R. § 64.1200(e) (emphasis added). In the view of the FCC, expressed in the 2003 TCPA Order, "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections," and "wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones." 2003 TCPA Order, 18 FCC Rcd. 14014, 14038 (2003).

Indeed, the only decision addressing the precise argument Defendant raises in its motion to dismiss since the Supreme Court's decision in *McLaughlin* expressly rejected it:

> The do-not-call provision's sole and express aim is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Courts have long recognized the importance of residential privacy interests. *See*, *e.g.*, *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) ("The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society. Our prior decisions have often remarked on the unique nature of the home . . . and have recognized that preserving

10

the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value.") (cleaned up); *see also* S. Rep. No. 102–178, at 4 ("The Supreme Court also has recognized that 'in the privacy of the home, . . . the individual's right to be left alone plainly outweighs the First Amendment rights of an intruder.'") (quoting *FCC v. Pacifica Found.*, 438 U.S. 726, 748 (1978)). Defendant's interpretation would protect the privacy interest of a home landline subscriber but not a home cellular subscriber—even when a cell phone is the sole phone for home use, as is increasingly the case. Defendant effectively ties residential privacy interests to an obsolete and disappearing transmission technology. But "[t]hose privacy interests do not depend upon whether the undesired telephone solicitations are received on a cellular phone [or] a landline." *Lyman v. QuinStreet, Inc.*, No. 23-CV-05056-PCP, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). There is no evidence that a call or message transmitted by a cell tower is less intrusive than a call or message delivered by a land line. Defendant's attempt to define away the privacy interests that Congress specifically sought to protect yields an absurd result. *United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013) (cleaned up) (""Statutory interpretations which would produce absurd results are to be avoided.").

Finally, under *Loper Bright*, when Congress expressly empowers an agency to decide how to apply a statutory term to specific facts found by the agency, the agency interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388. Here, Congress, in Section 227(c), broadly authorized the FCC to fact-find within the scope of its expertise and to "evaluate alternative methods and procedures," including "'do-not-call' systems" "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(A)–(E). Accordingly, the FCC determined, based on its findings, that to give proper meaning to the statutory text and to effect Congress's aim, cell phone users are presumptive residential telephone subscribers who may take part in the Do Not Call Registry. That interpretation is due special deference under *Loper Bright*. And, even without the special "deferential review" described in *Loper Bright*, the Court gives great weight, under *Skidmore* deference, to the FCC's interpretation because it was based on factual findings within the FCC's expertise, was thoroughly considered, validly reasoned, and consistent with the FCC's earlier and later pronouncements.

In sum, without deferring to the FCC, the Court independently concludes that the FCC got it right. Given the text, structure, and purpose of Section 227(c) and of the

11

TCPA as a whole, a cell phone is presumptively a residential telephone under the TCPA do-not-call provision, Section 227(c).

*Wilson v. Hard Eight Nutrition, LLC*, No. 25-cv-144-AA, attached as Exhibit 2.

This Court should reach the same conclusion.

### It would defeat the TCPA's purpose to interpret it as Defendant does

Congress enacted the TCPA because "people felt almost helpless in the face of repeated and unwanted telemarketing calls." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 663 (4th Cir. 2019) (citing S. Rep. No. 102-178, at 1-2 (1991)). To solve this problem, "Congress responded with an Act that featured a combination of public and private enforcement, allowing suits both to enjoin intrusive practices and deter future violations through money damages." *Id*. Accordingly, when interpreting the TCPA, the Court must remember it exists to protect consumers from unwanted telemarketing. *Id.* at 650, 654. *See also Suriano v. French Riviera Health Spa, Inc.,* No. 18-9141, 2018 U.S. Dist. LEXIS 216018, at *6 (E.D. La. Dec. 20, 2018) (also citing S. Rep. 102-178, at 5 (1991)).) That requires the Court to avoid overanalyzing the statute to defeat its purpose: "It would be dispiriting beyond belief if courts defeated Congress' obvious attempt to vindicate the public interest with interpretations that ignored the purpose, text, and structure of this Act at the behest of those whose abusive practices the legislative branch had meant to curb." *Krakauer,* 925 F.3d at 663.

In this context, courts recognized cellphones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California*, 573 U.S. 373, 385 (2014). Indeed, cellphones are with most of us at all times – at the dinner table, at school, at work and in our bedrooms. Rejecting the Defendant's narrow reading of "residential telephone subscriber" and "telephone solicitation" serves the privacy rights the TCPA seeks to protect. In an environment where consumer privacy is eroding, it would be deeply concerning for a court to invalidate the TCPA's privacy protections based on a rigid and narrow reading of the terms "residential subscriber" and "telephone solicitation" especially considering consumers have presumed for more than two decades that

they are protected from the unwanted harassment of telemarketers by including their number on the Do Not Call Registry, cellphone or not.

## CONCLUSION

For the reasons stated above, the Court should deny Defendant's motion in all respects.

Dated: July 13, 2025

PLAINTIFF,
By his attorney

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com
**Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

On July 13, 2025, I electronically served the foregoing document on counsel of record for the Defendant through the Court's CM/ECF system.

*/s/ Anthony I. Paronich*
Anthony I. Paronich

13