# EXHIBIT L

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW JAMES MCGONIGLE, ) | |
| *on behalf of himself and* ) | Civil Action No.: 1:24-cv-12201 |
| *others similarly situated*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FTD, LLC ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS, STAY, OR STRIKE**

The Court should deny Defendant FTD's motions to dismiss, stay, or strike in total.

First, Plaintiff sufficiently alleges that he is a residential subscriber of his cellular telephone number by alleging that he uses his cellular phone number exclusively for personal and household purposes. Plaintiff's cellular telephone number is his only telephone number and was not obtained to generate lawsuits.

Second, residential subscribers of cellular telephone numbers are entitled to the protections of the Telephone Consumer Protection Act's National Do Not Call Registry provision under the statute's plain language because the term "residential telephone subscriber" encompasses all types of telephone lines (landline and cellular) so long as they are used for personal purposes. And because the Court can reach this conclusion based on the TCPA's plain text, without deferring to the FCC, there is no basis to stay the case.

Third, Plaintiff McGonigle sufficiently alleges that FTD's TCPA violations were wilful or knowing by alleging that FTD knowingly chose not to remove numbers registered on the National

Do Not Call Registry or identified as reassigned on the Reassigned Number Database resulting in the text messages to Plaintiff.

Finally, there is no basis to strike Plaintiff's class allegations. Whether a telephone number is residential is a class member identification issue and class member identification is not a requirement for class certification. Moreover, the majority of courts to address this issue at the pleadings stage have found Defendant's argument to be premature at best.

## ARGUMENT

I.  **<u>Plaintiff Sufficiently Alleges that He is a Residential Subscriber</u>**

Plaintiff McGonigle sufficiently alleges that he is a residential subscriber of his cellular telephone number entitling him to the protections of the Telephone Consumer Protection Act's National Do Not Call Registry provision by alleging the facts and circumstances demonstrating that he uses his cellular telephone number exclusively for personal and household purposes. *Compare Gill v. Align Tech., Inc.*, 2022 U.S. Dist. LEXIS 87464, *8 (E.D. Wisc. May 16, 2022) ("Plaintiff's allegations that her wireless phone is a non-business, personal use phone that is registered on the do-not-call list is sufficient to allege that the phone was residential use.") *with Hicks v. Alarm.com Inc.*, No. 1:20-cv-532, 2020 U.S. Dist. LEXIS 157433, at *12 (E.D. Va. Aug. 6, 2020) [cited in FTD's motion] ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry—which appears to be undisputed—but his argument never returns to the facts of this case or the use of his phone. Perhaps easily addressed by amendment, this is another example of inadequate factual support for Plaintiff's claims.").

Specifically, after moving from Florida to Virginia, on August 5, 2024, Plaintiff McGonigle obtained a Virginia cellular telephone number that, when he immediate went to personally register

2

it on the National Do Not Call Registry, he determined was already registered on the National Do Not Call Registry. *See* first amended complaint (ECF 21) at ¶¶ 8-14.

Since being assigned the new Virginia cellular telephone number:

- Plaintiff McGonigle has been the regular and sole user of this number.
- Plaintiff McGonigle has used this number as his personal residential telephone number.
- Plaintiff McGonigle has not used this number for business or commercial purposes or in any business or marketing materials.
- Plaintiff McGonigle has not had a landline telephone number in his home or any other telephone number.
- Plaintiff McGonigle has used his cellular phone number for personal use only as one would use a landline telephone number in a home.
- Plaintiff McGonigle has used this number primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes.
- Plaintiff McGonigle has personally paid for his cell phone plan, and has not reimbursed by a business.

*See id.*; *see also* first amended complaint in *McGonigle v. Everyday Dose LLC* [attached as Exhibit 1] at ¶¶ 8-15.

Notwithstanding, despite Plaintiff McGonigle never consenting to receive telemarketing text messages from Defendant FTD, and his number being registered on the National Do Not Call Registry, on September 16 and 23, 2024, more than one month after the Virginia telephone number was reassigned to Plaintiff, Defendant sent a series of unsolicited telemarketing text messages promoting its products to Plaintiff. *See* first amended complaint at ¶¶ 15-20.

Given the transient nature of cellular telephone numbers, in 2018, the FCC established the Reassigned Number Database, which went online in 2021, to insulate companies like FTD from liability for violating the TCPA by allowing them to determine whether a telephone number they intend to contact has been reassigned to someone who has not previously consented to be contacted by them. *See In re Advanced Methods to Target & Eliminate Unlawful Robocalls*, 33 FCC Rcd 12024 (F.C.C. Dec. 13, 2018). However, FTD (and each of the other companies Plaintiff has sued under the TCPA) intentionally failed to use the Reassigned Number Database, resulting in its TCPA

3

violative text messages to Plaintiff. *See* first amended complaint at ¶ 22; *see also* first amended complaint in *McGonigle v. Everyday Dose LLC* at ¶ 25 ("Additionally, Defendant knowingly chose not to subscribe the FCC's Reassigned Number Database, which is a database of telephone numbers for companies to use to avoid making telemarketing calls to reassigned telephone numbers, including specifically those registered with the DNC Registry.").

As a result of its failure to abide by the FCC's directive in these circumstances, FTD now tries to shift the blame and burden on Plaintiff simply because Plaintiff moved to Virginia, gave up his prior non-Virginia telephone number, and obtained a new local one, resulting in a barrage of unwanted solicitations. This is patently absurd, and the fact that Plaintiff has chosen to exercise his rights under a federal statute designed to both protect him--and at the same time provide Defendant a simple and straightforward means for avoiding liability in precisely these circumstances (which Defendant intentionally failed to avail itself of)—does not convert Plaintiff's residential number into a business one. No court has ever found as much, nor will it. *Compare Katz v. Liberty Power Corp., LLC*, No. 1:18-cv-10506-ADB, 2019 U.S. Dist. LEXIS 162793, at *30 (D. Mass. Sep. 24, 2019) (explaining that a consumer is within the TCPA's zone of interest unless he maintained the number called by the defendant solely for "attracting … calls to support his TCPA lawsuits") *with Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 788-89 (W.D. Pa. 2016) [cited in FTD's motion], in which, at summary judgment, a TCPA plaintiff was found to lack standing where she testified her sole purpose for owning over 35 cell phones was to run what she referred to as a TCPA litigation business, and that these 35 cell phones were used only to collect telemarketing calls and were not called by anyone else for any other purpose).

As a result, the fact that Plaintiff McGonigle has received a number of TCPA violative calls and texts from various companies that failed to take the steps that are readily available to them to

4

avoid contacting people who have not agreed to be contacted in these situations and filed suits against them, as he has done here, does not alter the only reasonable conclusion to be drawn from Plaintiff's allegations—that he is a residential subscriber of his cellular telephone number. *See, e.g., Moore v. Club Exploria, LLC*, No. 19 C 2504, 2023 U.S. Dist. LEXIS 144183, at *18 (N.D. Ill. Aug. 17, 2023) ("However, the Seventh Circuit has said that frequent litigators may be better able to manage the litigation, so that is not a disqualification. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006). All Moore did was answer the telephone when the telemarketer called him. He did not entrap anyone. He did not create the violation.").

**II.     Cellular Telephone Numbers are Protected under National Do Not Call Registry Provision**

Cellular telephone numbers are entitled to the protections of the TCPA's National Do Not Call Registry provision. Defendants' argument that a cell phone cannot be a "residential" telephone number, and therefore that no cellular telephone is entitled to the TCPA's Registry protections, rests on a statutory interpretation that is "a bit strained as an initial matter." *Riley v. California*, 573 U.S. 373, 397 (2014). As with any question of statutory interpretation, the Court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016).

In enacting the Do Not Call provisions of the TCPA, Congress chose to extend protection to "residential telephone subscribers." *See* 47 C.F.R. § 64.1200(c)(2) (limiting DNC Registry to "residential" subscribed numbers). Reading the term "residential" to exclude other services, such as cellular telephone services, used for personal, household purposes is inconsistent with multiple canons of construction. Without a controlling statutory definition, as here, the term "residential" takes on its "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). And, under the fixed-meaning canon, "[w]ords must be given the

5

meaning they had when the text was adopted." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012).

With respect to the TCPA, there are potentially two relevant time frames to consider: 1934, when the Telecommunications Act of which the TCPA is a part was enacted, and 2003, when Congress passed the Do-Not-Call Implementation Act. Regardless of which the Court chooses, the meaning of the term "residential," as an adjective modifying "telephone subscribers," is the same. "Residential" means "used as a residence *or by residents*; adapted to (1936)/restricted to (2003) . . . residences; of or connected with (1936)/relating to (2003) . . . residence or residences." *Compare* Webster's New Collegiate Dictionary, Eleventh Ed. (2003) *with* Webster's Collegiate Dictionary (1936) (emphasis added) (cleaned up).

Especially in Webster's 2003 sense of "residential" meaning "restricted to" residences, the term "residential" is contrasted with the adjective "nonresidential," which is "not used as" or "not restricted to" residences or by residents. Webster's New Collegiate Dictionary, Eleventh Ed. (2003). In using "residential" language, Congress realized that, in the future, traditional residential forms of telecommunication like copper landlines may come to be supplanted by other technologies, like ISDN and T1 lines, Fiber Optics, VoIP, and cellular technologies. In using the term "residential," Congress meant what it said. It meant to contrast residential service *uses* from nonresidential *uses* and restrict DNC Registry protections to the former, regardless of the type of technology that the consumer chooses to use or a technology that can change. Indeed, as the Middle District of Pennsylvania held last year:

> The best reading of the word "residential" is not that it modifies the "telephone," but rather that "residential" and "telephone" both modify the "subscriber." So instead of describing a "subscriber" who owns a "residential telephone," Section 227(c)(1) describes a "telephone subscriber" who has subscribed for "residential," i.e., personal, purposes. "Residential" is therefore used in the broader sense of "relating to a resident" to

6

distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.

*Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024).

Even ignoring the FCC's interpretations, all of the "district courts that have considered this issue post-*Loper* [*Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)] have reached the same conclusion: cellular telephone users can be considered 'residential telephone subscribers' under § 227(c). *See Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 739 F. Supp. 3d 195, 2024 U.S. Dist. LEXIS 117544, 2024 WL 3293628, at *9 (S.D.N.Y. July 3, 2024) ('The Court therefore rejects Defendant's contention that Plaintiff falls outside the TCPA's protective ambit merely because he received the challenged calls on his cellphone.'); *Lyman v. Quinstreet, Inc.*, No. 23-CV-05056-PCP, 2024 U.S. Dist. LEXIS 123132, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024) ('the statutory text does not support [Defendant's] position, and instead is best read to include at least some cellular phone subscribers within the category of *residential telephone subscribers*')"; *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-cv-02087, 2024 U.S. Dist. LEXIS 165900, at *14-19 (N.D. Ohio Sep. 16, 2024); *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676, at *11 (M.D.N.C. Aug. 12, 2024) ("Third, this approach is consistent with the applicable regulatory provisions and FCC interpretation. In this regard, the statutory language of 47 U.S.C. § 227 does not explicitly preclude a cell phone from being considered a 'residential telephone.' … Further, the private right of action created under 47 U.S.C. § 227(c)(5) of the TCPA is premised on a 'violation of the regulations prescribed under this subsection.' As relevant here, subsections (c)(2) and (d) of those regulations prohibit an entity from calling a person on the national Do-Not-Call registry or on the entity's internal do-not-call list, respectively. Those same regulations also unambiguously state that the rules set forth in

7

these subsections 'are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.*' 47 C.F.R. § 64.1200(e).").

This is because the TCPA's National Do Not Call Registry provision "provides protections to a certain type of phone user, regardless of the technology." *Lirones*, 2024 U.S. Dist. LEXIS 165900, at *14-19; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024) ("The best reading of the word 'residential' is not that it modifies the 'telephone,' but rather that 'residential' and 'telephone' both modify the 'subscriber.' So instead of describing a 'subscriber' who owns a 'residential telephone,' Section 227(c)(1) describes a 'telephone subscriber' who has subscribed for 'residential,' i.e., personal, purposes. 'Residential' is therefore used in the broader sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.").

"Cellular telephones . . . are a kind of telephonic communications technology. A 'residential subscriber,' by contrast, does not refer to the specific phone technology, but to the type or identity of the subscriber to the technology. Thus, a 'residential subscriber' and a cellular telephone are not members of the same genus." *Lirones*, 2024 U.S. Dist. LEXIS 165900, at *14-19.

"The inclusion of the term 'cellular telephone' in § 227(b) and its exclusion from § 227(c) does not indicate that Congress intentionally omitted cellular telephones from § 227(c)'s protections; 'Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that

8

the [Do Not Call] registry is limited to a *residential telephone **line***, as Congress used that term in the preceding subsection.'" *Id*. "If the term *residential* referred to the telephone technology, then 'Congress's reference to a residential telephone *line* [in § 227(b)] would be surplusage, as a residential telephone would necessarily be a landline instead of a cellphone.'" *Id*.; *cf. Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 U.S. Dist. LEXIS 125001, at *3-9 (W.D. Va. July 25, 2018) [cited in FTD's motion] (finding that under § 227(b)(1), "the structure and language of the TCPA demonstrate that calls made to a cell phone are not calls made to a 'residential telephone line'").

"Furthermore, according to the TCPA's plain language and dictionary definitions of 'residence' and 'subscriber,' 'a residential subscriber is one who maintains a phone for residential purposes . . . i.e., for personal activities associated with his or her private, domestic life.'" *Lirones*, 2024 U.S. Dist. LEXIS 165900, at *14-19.

Accordingly, "based on the text of the statute and tools of statutory interpretation, the Court [should] reach the same conclusion in the absence of any FCC interpretation of the term 'residential subscriber'—that Plaintiff McGonigle's allegations supporting the conclusion that he is a residential subscriber of his cellular telephone number *"*satisfy both the plain text of the TCPA and the FCC's regulations*"*. *Id*.

And as a result, "the Court need not determine whether the Hobbs Act constrains the Court's review of the FCC's 2003 Order", and the Supreme Court's ruling in *McLoughlin Chiropractic Association v. McKesson Corporation*, No. 23-1226, will not change the outcome this dispute, making a stay inappropriate and unnecessary. *See id*. ("At this stage, Plaintiff's allegations are sufficient to establish that she is a residential telephone subscriber under the TCPA.").

9

### III. Plaintiff Sufficiently Alleges Defendant's TCPA Violations were Wilfull or Knowing

Plaintiff McGonigle sufficiently alleges that FTD's TCPA violations were willful or knowing by alleging that FTD knew or should have known that his number was both on the National Do Not Call Registry and that it was reassigned to Plaintiff McGonigle, who had not consented to be contacted by FTD. *See* first amended complaint at ¶¶ 21-24.

In interpreting the willful or knowing standard, courts require only that a party's actions were intentional, not that it was aware that it was violating the statute. *See, e.g.*, *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) ("willful or knowing violation of TCPA requires only that defendant know of the facts constituting the offense"); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013) ("[T]he Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute.").

The allegations at issue plainly demonstrate that the Defendant was taking intentional actions including not removing from their marketing lists individuals who were on the National Do Not Call Registry and/or who had numbers reassigned to them from persons who sometime in the past may have consented to be contacted by FTD. Despite its ability to prevent precisely these types of unwanted communications by scrubbing its marking lists against the National Do Not Call Registry and Reassigned Number Database, FTD deliberately chose not to. *See* first amended complaint at ¶¶ 21-24.

In fact, motions to dismiss on these grounds have been denied in cases involving much less specific allegations from plaintiffs. *See, e.g., Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-CAS(JCx), 2014 U.S. Dist. LEXIS 91976, at *12-13 (C.D. Cal. July 7, 2014) ("Similarly,

10

defendant argues that the FAC does not adequately allege that defendant acted knowingly and/or willfully in violating the TCPA. This argument fails because the FAC alleges that defendant's conduct constituted 'multiple knowing and/or willful violations of the TCPA,' *see* FAC ¶ 58, and the Court takes this allegation as true for the purposes of the present motion."). And the same outcome is warranted here.

### IV. There is No Basis to Strike Plaintiff's Class Allegations

Motions to strike are generally "disfavored." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). And though Federal Rule of Civil Procedure 23 permits courts to "deny class certification even before the plaintiff files a motion requesting certification," *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011), class allegations should only be stricken at this early stage when they "are facially defective and definitively establish that a class action cannot be maintained." *Wolfkiel v. Intersections Ins. Servs., Inc.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014). Of course, with respect to the TCPA, this question should be considered in the context of the Seventh Circuit's directive that "[c]lass certification is normal [in TCPA cases] . . . because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

Notwithstanding, before any discovery has taken place, FTD claims that Plaintiff McGonigle's class allegations should be stricken and that no court could ever certify a case under the TCPA's National Do Not Call Registry provision because the determination of whether a number is residential would need to be made on a case-by-case basis. Luckily for consumers bombarded with unwanted telemarketing calls despite their numbers being registered on the National Do Not Call Registry, this is not the case.

First, whether a telephone number is residential as opposed to used for business purposes is a class member identification issue, and challenges in identifying class members in cases under the TCPA's National Do Not Call Registry provision are not a preclusion to class certification. *See, e.g., Lenorowitz v. Mosquito Squad of Fairfield & Westchester Cty.*, No. 3:20-cv-01922 (JBA), 2022 U.S. Dist. LEXIS 170384, at *13-14 (D. Conn. Sep. 21, 2022) ("Defendant's arguments boil down to this: Plaintiff has not demonstrated that the putative class includes only people who were called on applicable phone lines, not phones used for business purposes. However, Defendant's concern is not with the ascertainability of the class, but instead with the feasibility of ensuring the class members meet the class definition. Plaintiff proposes resolving ambiguities by subpoena to the phone companies or obtaining information by a questionnaire or affidavit as part of the class notice process …. As the affidavit or questionnaire process has been approved by courts handling this very issue in TCPA class actions, the Court adopts it for this case. *See e.g., Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018) ('[I]f issues need to be tried to determine whether a line is a business line or a residential line, those issues could be resolved by asking class members whether the line in question is a residential line during the class notification process, or, in any event, through a standardized and efficient claims process at a later stage')."); *Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921, at *45-46 (N.D. Cal. July 22, 2020) ("Plaintiff, on the other hand, argues that he does not need to identify all class members at this stage, he can prove Intero dialed residential numbers on a class-wide basis, and Intero's speculation as to individual issues affecting that National DNC Class does not affect predominance. … The Court agrees with Plaintiff. The Ninth Circuit has concluded that 'the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification.'

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017). Additionally, Intero will have the opportunity to challenge the claims of absent class members if, and when, they file claims for damages. *See id*. Indeed, 'Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability.' *Id*. For example, '[a]t the claims administration stage, parties have long relied on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court to validate claims.' Id."); *see also Practice Mgmt. Support Servs. v. Cirque Du Soleil, Inc.*, 301 F. Supp. 3d 840, 857 (N.D. Ill. 2018) (certifying class under the TCPA's junk fax provision: "But this Court is bound by Seventh Circuit law. And the Seventh Circuit in *Mullins* expressly rejected the heightened ascertainability requirement adopted by other courts of appeals …. The *Mullins* court made clear that class member identification issues instead must be assessed in the context of 'the likely difficulties of managing a class action' prong of the superiority requirement" and "that manageability is almost never a bar to class certification. … Specifically addressing manageability concerns regarding proof of claims through affidavit, the *Mullins* court instructed that courts 'should not decline certification merely because the plaintiff's proposed method for identifying class members relies on affidavits.'").

Second, the majority of courts to address this issue at the pleadings stage have found arguments like FTD's argument to be premature at best. *See, e.g., Hughes v. Circle K Stores, Inc.*, 740 F. Supp. 3d 721, 727 (C.D. Ill. 2024) ("This reasoning extends to Circle K's arguments challenging commonality as well. While the Court appreciates that Circle K has concerns regarding the class definition, scope of the class, and factual challenges to commonality, its motion to strike class allegations is premature. … As discovery progresses, the class definition may very well need to be redefined and nothing in this Order precludes the Court from doing so."); *Lopez v. Consumer*

13

*Safety Tech., LLC*, No. 8:24-cv-150-WFJ-AAS, 2024 U.S. Dist. LEXIS 84873, at *14 (M.D. Fla. May 10, 2024) ("The instant matter is not before the Court on a Rule 23 motion to certify. Instead, Intoxalock brings a Rule 12(f) Motion to Strike at an early stage of proceedings, before discovery has taken place. Nothing in the Amended Complaint indicates that a large portion of the class members' telephone numbers are nonresidential"); *see also Williams v. PillPack LLC*, No. C19-5282 TSZ, 2021 U.S. Dist. LEXIS 27496, at *19-20 (W.D. Wash. Feb. 12, 2021) (granting class certification: "Defendant likewise maintains that Plaintiff has not proposed a reliable means of identifying residential phone numbers without individual inquiry. … Plaintiff's expert excluded from the list of proposed Class members 'all telephone numbers that were associated with any types of business and/or government' using LexisNexis data, and proposed other methods to 'cross-check the business identification process.' … Plaintiff's method reliably excludes non-residential numbers from the proposed Class list.").

As a result, the need to ultimately determine whether the reassigned, National Do Not Call Registry registered telephone numbers FTD sent text messages to were residential or business numbers is not a basis to deny class certification at this or any other stage.

The cases FTD cites do not support a different conclusion. For example, *Payne v. Sieva Networks, Inc.,* 347 F.R.D. 224, 227 (N.D. Cal. July 29, 2024), arose from text messages directed to owners of trucking businesses who had used their telephone numbers to register their trucking business with the Department of Transportation—including the plaintiff. In granting the defendant's motion to strike, the court relied on undisputed evidence that the defendant "target[ed] trucking businesses that ha[d] registered with the USDOT" and the plaintiff failed to provide any proof that any telephone number text messages "including what he contend[ed] [was] his personal cell phone number—[were] registered with the USDOT for any non-business purpose." *Id*.; *see*

14

*also Mattson v. Rocket Mortg., LLC*, No. 3:18-cv-00989-YY, 2024 U.S. Dist. LEXIS 207988, at *2-9 (D. Or. Sep. 16, 2024) [cited in FTD's motion] (finding that "there was a question of fact as to whether plaintiff's subject number was a residential or business number, and thus plaintiff could not satisfy the typicality and commonality requirements under Federal Rule of Civil Procedure 23").

Furthermore, in *Payne* the court acknowledged that other circumstances certification of classes under the TCPA's National Do Not Call Registry is appropriate, like when the communications are directed towards consumers—like here—in which case expert testimony and databases like Lexis-Nexis could be used to determine whether numbers were residential. *Payne,* 347 F.R.D. at 227.

Here, in contrast, FTD targets consumers for consumer purchases, including the "birthday flowers" that were advertised to Plaintiff McGonigle, Plaintiff has never used his number in connection with a business, and there is no evidence that any other putative class member did either.

Accordingly, based on the court's analysis in *Payne*, FTD's premature and otherwise unsupported motion to strike Plaintiff McGonigle's class allegations should be denied.

## CONCLUSION

For the reasons stated above, the Court should deny Defendant FTD's motion in total and direct the parties to commence discovery.

DATED this 7th day of April, 2025.

**PLAINTIFF**, individually and on behalf of all others similarly situated,

By: */s/ Anthony I. Paronich*

Anthony I. Paronich
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

*Attorney for Plaintiff and the putative Class*