# EXHIBIT O

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| ANDREW JAMES MCGONIGLE, on behalf of himself and others similarly situated<br><br>     Plaintiff,<br><br>          vs.<br><br>SHOPPERSCHOICE.COM, L.L.C.,<br><br>     Defendant. | Case No. 25-cv-00152-SDD-RLB |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR STAY

The Court should deny the Defendant Shopperschoice.com, L.L.C.'s ("BBQ Guys") motion in total.

*First*, as alleged in Plaintiff's First Amended Class Action Complaint (ECF No. 42), Plaintiff is a residential subscriber of his cellular telephone number because he uses his cellular phone number exclusively for personal and household purposes. Plaintiff's cellular telephone number is his only telephone number and was not obtained to generate lawsuits.

*Second*, residential subscribers of cellular telephone numbers are entitled to the protections of the Telephone Consumer Protection Act's National Do Not Call Registry provision under the statute's plain language because the term "residential telephone subscriber" encompasses all types of telephone lines (landline and cellular) so long as they are used for personal purposes. And the Court can reach this conclusion based on the TCPA's plain text, without deferring to the FCC.

*Third*, the TCPA's plain text and the corresponding FCC regulation promulgated pursuant to Congressional authority both confirm that text messages are subject to the National Do Not Call Registry provision because text messages are a type of "call" and a type of "telephone solicitation".

1

*Fourth*, Plaintiff McGonigle sufficiently alleges that Defendant's TCPA violations were wilful or knowing by alleging that BBQ Guys knowingly chose not to remove numbers registered on the National Do Not Call Registry or identified as reassigned on the Reassigned Number Database resulting in the text messages to Plaintiff.

*Finally,* there is no basis to stay the case pending the Supreme Court's Decision in *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp*., et al, No. 23-1226 because the Supreme Court ruled in that case on June 21, 2025. *See* Exhibit 1. Notably, the Supreme Court's ruling does not impact the Plaintiff's arguments, which are all based on the plain text of the statute and regulations promulgated pursuant to an express grant of Congressional authority. *See Seven Cty. Infrastructure Coal. v. Eagle Cty.*, 145 S. Ct. 1497 (2025) ("But when an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard. Under that standard, a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained."); *Chennette v. Porch.Com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022) ("Section 227(c) of the TCPA directs the FCC to promulgate regulations under which 'residential subscribers' may request that their telephone numbers be included in a national do-not-call registry and database, and to prohibit telephone solicitation to 'any subscriber included in such database.' 47 U.S.C. § 227(c)(3)(F). … FCC regulations protecting residential subscribers 'are applicable to any person or entity making telephone solicitations or telemarketing calls to *wireless* telephone numbers ….' 47 C.F.R. § 64.1200(e) (emphasis added). In the view of the FCC, … 'it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections,' and 'wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones.'").

## BACKGROUND

Plaintiff obtained his cell phone on August 5, 2024 and confirmed its registration with the National DNC Registry that same day. *See* First Amended Complaint, ECF No. 42, at ¶ 11. Plaintiff obtained that phone number because he moved from Florida to Virginia. *Id.* at ¶ 12. Plaintiff does not have a landline telephone number or any other phone number. *Id.* at ¶ 13. He uses his cellular phone primarily to communicate with friends and family, and also schedule personal appointments. *Id.* at ¶ 14. He does not use his phone for business purposes, but instead uses his cellular phone number primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes. *Id.* at ¶ 15. Plaintiff personally pays for his cell phone plan; it is not reimbursed by a business. *Id.* at ¶ 16.

After Plaintiff obtained his cell phone number, he received at least eight solicitation text messages from Defendant. *Id.* at ¶ 18. The text messages were sent from September 9 to October 16, 2024, more than thirty-one days after Plaintiff's number was registered with the DNC Registry. *Id.* at ¶ 19. Each message advertised the Defendant's business, including links to shop Defendant's website for outdoor grills and televisions. *Id.* at ¶ 18. Plaintiff did not give Defendant prior express consent to send him these text messages nor did he request this information. In fact, Plaintiff had no prior relationship with the Defendant. This is not disputed.

While the text messages were intended for someone other than, and unknown to, Plaintiff, Defendant knew, or should have known, that Plaintiff's number had been reassigned and was registered with the National DNC Registry. *Id.* at ¶ 25. But Defendant knowingly chose not to subscribe to the FCC's Reassigned Number Database, which would have allowed it to avoid making telemarketing calls to reassigned telephone numbers, especially those on the DNC registry. *Id.* at ¶ 26. Indeed, calling the new owner of a phone number based on the prior owner's

3

provisioning of a phone number is a violation of the Telephone Consumer Protection Act. *See, e.g., N. L. v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) ("Credit One's intent to call a customer who had consented to its calls does not exempt Credit One from liability under the TCPA when it calls someone else who did not consent.").

And as a result of the harm Plaintiff has suffered from Defendant's text messages, Plaintiff has filed this suit. *See* First Amended Complaint at ¶ 24.

## ARGUMENT

### <u>Plaintiff Sufficiently Alleges that He is a Residential Subscriber</u>

Plaintiff McGonigle sufficiently alleges that he is a residential subscriber of his cellular telephone number entitling him to the protections of the Telephone Consumer Protection Act's National Do Not Call Registry provision by alleging the facts and circumstances demonstrating that he uses his cellular telephone number exclusively for personal and household purposes. *Compare Gill v. Align Tech., Inc.*, 2022 U.S. Dist. LEXIS 87464, *8 (E.D. Wisc. May 16, 2022) ("Plaintiff's allegations that her wireless phone is a non-business, personal use phone that is registered on the do-not-call list is sufficient to allege that the phone was residential use.") *with Hicks v. Alarm.com Inc.*, No. 1:20-cv-532, 2020 U.S. Dist. LEXIS 157433, at *12 (E.D. Va. Aug. 6, 2020) ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry—which appears to be undisputed—but his argument never returns to the facts of this case or the use of his phone. Perhaps easily addressed by amendment, this is another example of inadequate factual support for Plaintiff's claims."); *see Noviello v. Holloway Funding Grp.*, No. 3:22-cv-52-BN, 2023 U.S. Dist. LEXIS 3060, at *12-13 (N.D. Tex. Jan. 9, 2023) (citing *Hunsinger v. Alpha Cash Buyers LLC, No. 3:21-cv-1598-D*, 2022 U.S. Dist. LEXIS 32319, 2022 WL 562761 at *2 (N.D. Tex. Feb. 24, 2022): "'[C]ourts have held that cellular telephones can

4

qualify as residential telephones, so long as a plaintiff pleads that the cellular telephone is used for residential purposes.'").

Specifically, after moving from Florida to Virginia, on August 5, 2024, Plaintiff McGonigle obtained a Virginia cellular telephone number that, when he immediate went to personally register it on the National Do Not Call Registry, he determined was already registered on the National Do Not Call Registry. *See* First Amended Complaint (ECF 42) at ¶¶ 8-16. Since being assigned the new Virginia cellular telephone number:

- Plaintiff McGonigle has been the regular and sole user of this number.
- Plaintiff McGonigle has used this number as his personal residential telephone number.
- Plaintiff McGonigle has not used this number for business or commercial purposes or in any business or marketing materials.
- Plaintiff McGonigle has not had a landline telephone number in his home or any other telephone number.
- Plaintiff McGonigle has used his cellular phone number for personal use only as one would use a landline telephone number in a home.
- Plaintiff McGonigle has used this number primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes.
- Plaintiff McGonigle has personally paid for his cell phone plan, and has not reimbursed by a business.

*See id*. Notwithstanding, despite Plaintiff McGonigle never consenting to receive telemarketing text messages from Defendant, and his number being registered on the National Do Not Call Registry, months after the Virginia telephone number was reassigned to Plaintiff, Defendant sent a series of unsolicited telemarketing text messages promoting its products to Plaintiff. *See id*. at ¶¶ 17-23.

Given the transient nature of cellular telephone numbers, in 2018, the FCC established the Reassigned Number Database, which went online in 2021, to insulate companies like Defendant from liability for violating the TCPA by allowing them to determine whether a telephone number they intend to contact has been reassigned to someone who has not previously consented to be contacted by them. *See In re Advanced Methods to Target & Eliminate Unlawful Robocalls*, 33

FCC Rcd 12024 (F.C.C. Dec. 13, 2018). However, Defendant (and each of the other companies Plaintiff has sued under the TCPA) intentionally failed to use the Reassigned Number Database, resulting in its TCPA violative text messages to Plaintiff. *See* First Amended Complaint at ¶ 25 ("Additionally, Defendant knowingly chose not to subscribe the FCC's Reassigned Number Database, which is a database of telephone numbers for companies to use to avoid making telemarketing calls to reassigned telephone numbers, including specifically those registered with the DNC Registry.").

As a result of its failure to abide by the FCC's directive in these circumstances, Defendant now tries to shift the blame and burden on Plaintiff simply because Plaintiff moved to Virginia, gave up his prior non-Virginia telephone number, and obtained a new local one, resulting in a barrage of unwanted solicitations. This is patently absurd, and the fact that Plaintiff has chosen to exercise his rights under a federal statute designed to both protect him--and at the same time provide Defendant a simple and straightforward means for avoiding liability in precisely these circumstances (which Defendant intentionally failed to avail itself of)—does not convert Plaintiff's residential number into a business one. No court has ever found as much, nor will it. *Compare Katz v. Liberty Power Corp., LLC*, No. 1:18-cv-10506-ADB, 2019 U.S. Dist. LEXIS 162793, at *30 (D. Mass. Sep. 24, 2019) (explaining that a consumer is within the TCPA's zone of interest unless he maintained the number called by the defendant solely for "attracting … calls to support his TCPA lawsuits") *with Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 788-89 (W.D. Pa. 2016), in which, at summary judgment, a TCPA plaintiff was found to lack standing where she testified her sole purpose for owning over 35 cell phones was to run what she referred to as a TCPA litigation business, and that these 35 cell phones were used only to collect telemarketing calls and were not called by anyone else for any other purpose.

6

As a result, the fact that, Plaintiff McGonigle has received a number of TCPA violative calls and texts from various companies that failed to take the steps that are readily available to them to avoid contacting people who have not agreed to be contacted in these situations and filed suits against them, as he has done here, does not alter the only reasonable conclusion to be drawn from Plaintiff's allegations—that he is a residential subscriber of his cellular telephone number— or provide a basis to stay the case pending ruling on Defendant's motions to dismiss and strike class allegations. *See, e.g., Moore v. Club Exploria, LLC*, No. 19 C 2504, 2023 U.S. Dist. LEXIS 144183, at *18 (N.D. Ill. Aug. 17, 2023) ("However, the Seventh Circuit has said that frequent litigators may be better able to manage the litigation, so that is not a disqualification. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006). All Moore did was answer the telephone when the telemarketer called him. He did not entrap anyone. He did not create the violation.").

**<ins>Cellular Telephone Numbers are Protected under National Do Not Call Registry Provision</ins>**

Cellular telephone numbers are entitled to the protections of the TCPA's National Do Not Call Registry provision. Even ignoring the FCC's interpretations, all of the "district courts that have considered this issue post-*Loper* [*Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)] have reached the same conclusion: cellular telephone users can be considered 'residential telephone subscribers' under § 227(c). *See Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 739 F. Supp. 3d 195, 2024 U.S. Dist. LEXIS 117544, 2024 WL 3293628, at *9 (S.D.N.Y. July 3, 2024) ('The Court therefore rejects Defendant's contention that Plaintiff falls outside the TCPA's protective ambit merely because he received the challenged calls on his cellphone.'); *Lyman v. Quinstreet, Inc.*, No. 23-CV-05056-PCP, 2024 U.S. Dist. LEXIS 123132, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024) ('the statutory text does not support [Defendant's] position, and instead is best read to include at least some cellular phone subscribers within the category of *residential*

*telephone subscribers*').'" *See Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-cv-02087, 2024 U.S. Dist. LEXIS 165900, at *14-19 (N.D. Ohio Sep. 16, 2024); *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676, at *11 (M.D.N.C. Aug. 12, 2024) ("Third, this approach is consistent with the applicable regulatory provisions and FCC interpretation. In this regard, the statutory language of 47 U.S.C. § 227 does not explicitly preclude a cell phone from being considered a 'residential telephone.' … Further, the private right of action created under 47 U.S.C. § 227(c)(5) of the TCPA is premised on a 'violation of the regulations prescribed under this subsection.' As relevant here, subsections (c)(2) and (d) of those regulations prohibit an entity from calling a person on the national Do-Not-Call registry or on the entity's internal do-not-call list, respectively. Those same regulations also unambiguously state that the rules set forth in these subsections 'are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*.' 47 C.F.R. § 64.1200(e).").

This is because the TCPA's National Do Not Call Registry provision "provides protections to a certain type of phone user, regardless of the technology." *Lirones*, 2024 U.S. Dist. LEXIS 165900, at *14-19; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024) ("The best reading of the word 'residential' is not that it modifies the 'telephone,' but rather that 'residential' and 'telephone' both modify the 'subscriber.' So instead of describing a 'subscriber' who owns a 'residential telephone,' Section 227(c)(1) describes a 'telephone subscriber' who has subscribed for 'residential,' i.e., personal, purposes. 'Residential' is therefore used in the broader sense of 'relating to a resident' to distinguish such a subscriber

8

from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.").

"Cellular telephones . . . are a kind of telephonic communications technology. A 'residential subscriber,' by contrast, does not refer to the specific phone technology, but to the type or identity of the subscriber to the technology. Thus, a 'residential subscriber' and a cellular telephone are not members of the same genus." *Lirones*, 2024 U.S. Dist. LEXIS 165900, at *14-19.

"The inclusion of the term 'cellular telephone' in § 227(b) and its exclusion from § 227(c) does not indicate that Congress intentionally omitted cellular telephones from § 227(c)'s protections; 'Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a *residential telephone **line***, as Congress used that term in the preceding subsection.'" *Id*. "If the term *residential* referred to the telephone technology, then 'Congress's reference to a residential telephone *line* [in § 227(b)] would be surplusage, as a residential telephone would necessarily be a landline instead of a cellphone.'" *Id*.; *cf. Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 U.S. Dist. LEXIS 125001, at *3-9 (W.D. Va. July 25, 2018) (finding that under § 227(b)(1), "the structure and language of the TCPA demonstrate that calls made to a cell phone are not calls made to a 'residential telephone line'").

"Furthermore, according to the TCPA's plain language and dictionary definitions of 'residence' and 'subscriber,' 'a residential subscriber is one who maintains a phone for residential purposes . . . i.e., for personal activities associated with his or her private, domestic life.'" *Lirones*, 2024 U.S. Dist. LEXIS 165900, at *14-19.

Accordingly, "based on the text of the statute and tools of statutory interpretation, the Court [should] reach the same conclusion in the absence of any FCC interpretation of the term 'residential subscriber'—that Plaintiff McGonigle's allegations supporting the conclusion that he is a residential subscriber of his cellular telephone number *"*satisfy both the plain text of the TCPA and the FCC's regulations". *Id.* Indeed, "[T]he majority of courts throughout the country . . . have held that cell phones . . . are entitled to the TCPA's protection as residential telephones." *Tessu v. AdaptHealth, LLC*, No. SAG-23-0364, 2023 WL 5337121, at *5 (D. Md. Aug. 17, 2023). This is consistent with the plain, textualist reading of the TCPA articulated above.[1]

---

[1]     *See also Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) ("As Hall alleges that she was the owner and subscriber of a cell phone number on the Do-Not-Call Registry that received unsolicited text messages in violation of the TCPA, she has stated an injury in fact sufficient to satisfy Article III."); *Barton v. JMS Assoc. Mktg., LLC*, No. 21-35836, 2023 WL 2009925, at *1-2 (9th Cir. Feb. 15, 2023) (explaining the "district court . . . erred in declining to award damages" under 47 C.F.R. § 64.1200(c)(2) for calls to the plaintiff's "cell phone"); *Kemen v. Cincinnati Bell Tel. Co. LLC*, No. 1:22-CV-152, 2023 WL 361136, at *5 (S.D. Ohio Jan. 23, 2023) ("To be sure, cell phones *can* be 'residential' under the TCPA."); *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *4 (D.N.J. Jan. 11, 2023) ("The consensus in [the Third] Circuit is that Do Not Call claims may apply to cell phones."); *Noviello v. Holloway Funding Grp.*, No. 3:22-CV-52-BN, 2023 WL 128395, at *5 (N.D. Tex. Jan. 9, 2023) ("[C]ourts have held that cellular telephones can qualify as residential telephones, so long as a plaintiff pleads that the cellular telephone is used for residential purposes."); *Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS-JPS, 2022 WL 1540016, at *3 (E.D. Wis. May 16, 2022) ("The TCPA and its enabling regulations also apply to wireless telephone numbers such as Plaintiff's, which were personal use, not associated with any business, and registered on the National Do Not Call Registry."); *Miholich v. Senior Life Ins. Co.*, No. 21-CV-1123-WQH-AGS, 2022 WL 1505865, at *3 (S.D. Cal. May 12, 2022) (rejecting the defendant's position that the plaintiff's cellular telephone "was not a residential telephone subscriber covered by the TCPA"); *Rose v. New TSI Holdings, Inc.*, No. 21-CV-5519 (JPO), 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022) (rejecting the defendant's argument that the plaintiff "has no private right of action under the TCPA because he alleges only that he received prerecorded messages on his cellphone, thus failing to establish that he is a residential telephone subscriber"); *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 562761, at *2 (N.D. Tex. Feb. 24, 2022) ("courts have held that cellular telephones can qualify as residential telephones, so long as a plaintiff pleads that the cellular telephone is used for

As one Court put it, addressing a similar motion: "even if the FCC's ruling is not entitled to deference, an independent analysis reveals that the agency got it right." *Abboud v. Lotta Dough, LLC*, No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547, *3 (W.D. Tex. Feb. 27, 2025). This Court can—and should—follow suit.

### Text Messages are Subject to the TCPA's National Do Not Call Registry Provision

"A text message to a cellular telephone, it is undisputed, qualifies as a 'call'". *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (interpreting the TCPA's robocalls provision); *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022); *Ford v. NaturaLawn of Am., Inc.*, No. CV 24-354 PJM, 2024 WL 3161762, at *6 (D. Md. June 25, 2024); *Cavey v. MarketPro Homebuyers, LLC*, 542 F. Supp. 3d 418, 424 (E.D. Va. 2021).

Indeed, the Eleventh Circuit has held that there are at least two distinct types of calls: "text message calls" and "voice calls". *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305

---

residential purposes"); *Mantha v. QuoteWizard.com, LLC*, No. CV 19-12235-LTS, 2022 WL 325722, at *3 (D. Mass. Feb. 3, 2022) (agreeing that the "TCPA's DNC protections apply to cellular phone numbers"); *Dudley v. Vision Solar, LLC*, No. CV 21-659, 2021 WL 3077557, at *5 (E.D. Pa. July 21, 2021) ("The consensus in this Circuit is that Do Not Call claims may apply to cell phones."); *McDermet v. DirecTV, LLC*, No. CV 19-11322-FDS, 2021 WL 217336, at *12 (D. Mass. Jan. 21, 2021) ("[I]t is unlawful to 'initiate any telephone solicitation to' a 'residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry.' 47 C.F.R. § 64.1200(c)(2). That includes cell-phone owners."); *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 656 (W.D. Tenn. 2020) ("A cellular telephone can satisfy the "residential telephone subscriber" element of § 64.1200(c) & (d)."); *Mestas v. CHW Grp. Inc.*, 508 F. Supp. 3d 1011, 1028 (D.N.M. 2020) ("[o]ther courts that have considered the application of § 64.1200(e) have concluded that a cell phone user can qualify as a residential telephone subscriber under § 64.1200(c) and (d)"); *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020) (rejecting the defendant's contention "that cell phones, as a matter of law, cannot be residential subscribers," based on "common sense and the greater weight of authorities"); *Beal v. Outfield Brew House, LLC*, 29 F.4th 391 (8th Cir. 2022).

(11th Cir. 2015); *see Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 WL 4190513, at *8 (M.D.N.C. Aug. 12, 2024).

Consistent with that, under § 227(a), a "telephone solicitation" is "the initiation of a telephone call *or message*[2] for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). Within that context, and in view of the ordinary meaning of "message," Defendant's argument falls flat. The TCPA's statutory text makes clear that the National Do Not Call Registry Provision's private right of action is afforded to "residential telephone subscribers" who receive unwanted "telephone solicitations". 47 U.S.C. § 227(c)(1). No Court has ever held otherwise.

In fact, the only circuit court to address the issue post-*Loper* similarly concluded that the TCPA's National Do Not Call Registry provision restricts text message based on the consistent use of the term "telephone solicitation" between the statute and the regulation. As the Seventh Circuit explained, it is still necessary and appropriate for courts to look to the regulation in interpreting the TCPA's National Do Not Call Registry provision because "In enacting the TCPA, Congress granted the FCC statutory authority to create rules protecting consumers from unwanted 'telephone solicitations.' *See* 47 U.S.C. § 227(c). The FCC promulgated the regulations at issue here pursuant to its delegated authority and incorporated Congress's definition of 'telephone solicitation' within them. 47 C.F.R. § 64.1200(f)(15)." *Hulce v. Zipongo Inc.*, 132 F.4th 493, 497 n.1 (7th Cir. 2025)

---

[2] "A communication in writing"*Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/message (last visited July 1, 2025).

(reasoning that a text message was a telephone solicitation but affirming dismissal on other grounds).[3]

By its plain text, then, 47 C.F.R. § 64.1200(c)(2) prohibits making a "telephone solicitation," which such term includes *either* a *call* or a *message*. If a text message is not a "call" under 47 C.F.R. § 64.1200(c)(2), it is surely a "message," and therefore still actionable. *E.g.*, *Hall*, 72 F.4th at 986; *Warciak*, 949 F.3d at 356; *Ford*, 2024 WL 3161762, at *6 ("At bottom, the TCPA permits a telephone consumer to sue a telemarketer if it can be shown that the consumer received more than one solicitation (whether by call or by text) within the preceding 12-month period in violation of the FCC's regulations governing such communications.").

That conclusion is not changed simply because text messaging did not exist in 1991, as Defendant argues. Indeed, text messaging did exist in 2003 when the FCC promulgated 47 C.F.R. § 64.1200(c)(2), pursuant to its Congressional mandate. *See also Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (reasoning that because § 64.1200 references certain exceptions for text messages, it would be peculiar if § 64.1200(c) did not apply to texts).

And the Defendant's argument that a consumer can simply take a step to stop the unwanted text messages (but not calls) is similarly misleading and unavailing. A consumer can stop telemarketing calls by blocking the Caller ID number that called them, which is functional

---

[3] Post-*Loper*, countless district courts have similarly found that the National Do Not Call Registry's private right of action applies to text messages, a sampling of which includes *Mantha v. Quotewizard.Com, LLC*, 347 F.R.D. 376, 387 (D. Mass. 2024) ("the texts from [defendant] amounted to 'telephone solicitations' within the meaning of the TCPA."); *Misner v. Empire Auto Protect, LLC,* No. 2:24-cv-1282, 2024 U.S. Dist. LEXIS 202146, at *7, 12 (S.D. Ohio Nov. 6, 2024) (receipt of unsolicited text messages supports a private right of action under Section 227(c)); *Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, 2025 U.S. Dist. LEXIS 13605, at *12, 17 (D. Ariz. Jan. 27, 2025) (same); *Bradshaw v. CHW Grp., Inc.,* No. 24-cv-00114 (MEF)(JBC), 2025 U.S. Dist. LEXIS 13649 (D.N.J. Jan. 24, 2025) (same).

equivalent of sending a "STOP" text message. And a plaintiff is not required to text stop to a defendant's text messages to pursue a claim under the TCPA's National Do Not Call Registry provision. *See, e.g., Trim v. Mayvenn, Inc.*, No. 20-cv-03917-MMC, 2022 U.S. Dist. LEXIS 63222, at *6-7 (N.D. Cal. Apr. 5, 2022) ("Mayvenn further contends Trim's failure to 'complain' or 'respond with a "STOP" message' upon receiving the first text from Mayvenn shows that she 'took steps to allow the continuance of the injury while building a record to facilitate a later claim.' (See Mot. at 10:13-11:2.) Such argument, however, 'misstates the injury required to bring a TCPA claim and assumes a failure to mitigate statutory damages where no such duty exist[s].' *See N.L. v. Credit One Bank, N.A.*, Case No. 2:17-cv-01512-JAM-DB, 2018 U.S. Dist. LEXIS 191497, 2018 WL 5880796, at *4 (E.D. Cal. Nov. 8, 2018) (rejecting argument that plaintiff who 'allowed the calls to continue after consulting with legal counsel' lacked standing to bring TCPA claim); *see also Ahmed v. HSBC Bank USA, Nat'l Ass'n*, Case No. ED CV 15-2057 FMO (SPx), 2017 U.S. Dist. LEXIS 183910, 2017 WL 5720548, at *2 (C.D. Cal. Nov. 6, 2017) (noting 'weight of available authority indicates there is no duty to mitigate statutory damages in . . . TCPA cases' (internal quotation, citation, and alteration omitted)) (collecting cases). Accordingly, to the extent Mayvenn relies on lack of standing, it has not shown it is entitled to summary judgment.").

Accordingly, consistent with every court to address the issue post-*Loper*, the Court should conclude that the TCPA's National Do Not Call Registry provision applies to text messages.

## Plaintiff Sufficiently Alleges Defendant's TCPA Violations were Willful or Knowing

Plaintiff McGonigle sufficiently alleges that Defendant's TCPA violations were willful or knowing by alleging that Defendant knowingly chose not to subscribe the FCC's Reassigned Number Database, which is a database of telephone numbers for companies to use to avoid making

telemarketing calls to reassigned telephone numbers, including specifically those registered with the DNC Registry, resulting in the text messages to Plaintiff. *See* First Amended Complaint at ¶¶ 25-26.

In interpreting the willful or knowing standard, courts require only that a party's actions were intentional, not that it was aware that it was violating the statute. *See, e.g.*, *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (holding that the treble damages TCPA requires mere "knowing" conduct, not wanton or malicious conduct); *Wakefield v. ViSalus, Inc.*, No. 3:15-cv-1857-SI, 2019 U.S. Dist. LEXIS 104862, at *3 (D. Or. June 24, 2019) ("the Court adopts the more common interpretation that 'willfully' or 'knowingly' requires only that an unlawful act be done intentionally or volitionally, as opposed to inadvertently, and not that Defendant must have known that its conduct would violate the statute"); *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001) (a willful or knowing violation does not require bad faith, malice or deliberate intent to violate the law, but only "that the person have reason to know, or should have known, that his conduct would violate the statute").

The allegations at issue plainly demonstrate that the Defendant was taking intentional actions including not removing from their marketing lists individuals who were on the National Do Not Call Registry and/or who had numbers reassigned to them from persons who sometime in the past may have consented to be contacted by Defendant. Despite its ability to prevent precisely these types of unwanted communications by scrubbing its marking lists against the National Do Not Call Registry and Reassigned Number Database, Defendant deliberately chose not to. *See* first amended complaint at ¶¶ 25-26.

In fact, motions to dismiss on these grounds have been denied in cases involving much less specific allegations from plaintiffs. *See, e.g., Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-

CAS(JCx), 2014 U.S. Dist. LEXIS 91976, at *12-13 (C.D. Cal. July 7, 2014) ("Similarly, defendant argues that the FAC does not adequately allege that defendant acted knowingly and/or willfully in violating the TCPA. This argument fails because the FAC alleges that defendant's conduct constituted 'multiple knowing and/or willful violations of the TCPA,' *see* FAC ¶ 58, and the Court takes this allegation as true for the purposes of the present motion."). And the same outcome is warranted here.

### The Motion to Stay is Moot because the Supreme Court Already Ruled and the Only Decision Issued Following the Supreme Court's Decision Supports the Plaintiff's Position

The Supreme Court's Decision in *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*, et al. was entered on June 21, 2025. *See* Exhibit 1. As such, no stay is necessary. That decision only cements the Plaintiff's arguments above, which relies on a textualist reading of the TCPA. However, the Supreme Court's Decision also directs that federal courts should "afford[] appropriate respect" to prior FCC Orders on TCPA issues:

> The District Court is not bound by the FCC's interpretation of the TCPA. The District Court should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.

*Id.* at *27. The FCC has long-entered Orders that support the Plaintiff's positions here.

First, FCC regulations protecting residential subscribers "are applicable to any person or entity making telephone solicitations or telemarketing calls to *wireless* telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991' [('2003 TCPA Order')]." 47 C.F.R. § 64.1200(e) (emphasis added). In the view of the FCC, expressed in the 2003 TCPA Order, "it is more consistent with the overall intent of the TCPA to

16

allow wireless subscribers to benefit from the full range of TCPA protections," and "wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones." 2003 TCPA Order, 18 FCC Rcd. 14014, 14038 (2003).

Second, "in several rules, the FCC reiterates that the TCPA affords text messages 'the same consumer protections . . . as voice calls.'" *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203, 1206 (M.D. Fl. 2022) *citing In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8016 (2015).

Indeed, the only decision that relies on the Supreme Court's decision in *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*, et al. was entered on Friday, June 27, 2025 in another TCPA case, *Wilson v. Hard Eight Nutrition, LLC*, Civil Action No. 25-cv-144-AA. The 17-page decision denying a substantially similar motion to dismiss is attached as Exhibit 2. In that decision, Judge Aiken summarized:

> The do-not-call provision's sole and express aim is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Courts have long recognized the importance of residential privacy interests. *See*, *e.g.*, *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) ("The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society. Our prior decisions have often remarked on the unique nature of the home . . . and have recognized that preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value.") (cleaned up); *see also* S. Rep. No. 102–178, at 4 ("The Supreme Court also has recognized that 'in the privacy of the home, . . . the individual's right to be left alone plainly outweighs the First Amendment rights of an intruder.'") (quoting *FCC v. Pacifica Found.*, 438 U.S. 726, 748 (1978)). Defendant's interpretation would protect the privacy interest of a home landline subscriber but not a home cellular subscriber—even when a cell phone is the sole phone for home use, as is increasingly the case. Defendant effectively ties residential privacy interests to an obsolete and disappearing transmission technology. But "[t]hose privacy interests do not depend upon whether the undesired telephone solicitations are received on a cellular phone [or] a landline." *Lyman v. QuinStreet, Inc.*, No. 23-CV-05056-PCP, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). There is no evidence that a call or message transmitted by a cell tower is less

17

intrusive than a call or message delivered by a land line. Defendant's attempt to define away the privacy interests that Congress specifically sought to protect yields an absurd result. *United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013) (cleaned up) (""Statutory interpretations which would produce absurd results are to be avoided.").

Finally, under *Loper Bright*, when Congress expressly empowers an agency to decide how to apply a statutory term to specific facts found by the agency, the agency interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388. Here, Congress, in Section 227(c), broadly authorized the FCC to fact-find within the scope of its expertise and to "evaluate alternative methods and procedures," including "'do-not-call' systems" "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(A)–(E). Accordingly, the FCC determined, based on its findings, that to give proper meaning to the statutory text and to effect Congress's aim, cell phone users are presumptive residential telephone subscribers who may take part in the Do Not Call Registry. That interpretation is due special deference under *Loper Bright*. And, even without the special "deferential review" described in *Loper Bright*, the Court gives great weight, under *Skidmore* deference, to the FCC's interpretation because it was based on factual findings within the FCC's expertise, was thoroughly considered, validly reasoned, and consistent with the FCC's earlier and later pronouncements.

In sum, without deferring to the FCC, the Court independently concludes that the FCC got it right. Given the text, structure, and purpose of Section 227(c) and of the TCPA as a whole, a cell phone is presumptively a residential telephone under the TCPA do-not-call provision, Section 227(c).

This Court should reach the same conclusion.

### It would defeat the TCPA's purpose to interpret it as Defendant does

Congress enacted the TCPA because "people felt almost helpless in the face of repeated and unwanted telemarketing calls." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 663 (4th Cir. 2019) (citing S. Rep. No. 102-178, at 1-2 (1991)). To solve this problem, "Congress responded with an Act that featured a combination of public and private enforcement, allowing suits both to enjoin intrusive practices and deter future violations through money damages." *Id.*

Accordingly, when interpreting the TCPA, the Court must remember it exists to protect consumers from unwanted telemarketing. *Id.* at 650, 654. *See also Suriano v. French Riviera Health Spa, Inc.,* No. 18-9141, 2018 U.S. Dist. LEXIS 216018, at *6 (E.D. La. Dec. 20, 2018) (also citing S. Rep. 102-178, at 5 (1991)).) That requires the Court to avoid overanalyzing the statute to defeat its purpose: "It would be dispiriting beyond belief if courts defeated Congress' obvious attempt to vindicate the public interest with interpretations that ignored the purpose, text, and structure of this Act at the behest of those whose abusive practices the legislative branch had meant to curb." *Krakauer,* 925 F.3d at 663.

In this context, courts recognized cellphones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California,* 573 U.S. 373, 385 (2014). Indeed, cellphones are with most of us at all times – at the dinner table, at school, at work and in our bedrooms. Rejecting the Defendant's narrow reading of "residential telephone subscriber" and "telephone solicitation" serves the privacy rights the TCPA seeks to protect. In an environment where consumer privacy is eroding, it would be deeply concerning for a court to invalidate the TCPA's privacy protections based on a rigid and narrow reading of the terms "residential subscriber" and "telephone solicitation" especially considering consumers have presumed for more than two decades that they are protected from the unwanted harassment of telemarketers by including their number on the Do Not Call Registry, cellphone or not.

## CONCLUSION

For the reasons stated above, the Court should deny Defendant's motion in all respects.

19

Dated: July 1, 2025

PLAINTIFF,
By his attorney


*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com
**Attorney for Plaintiff**


## CERTIFICATE OF SERVICE

On July 1, 2025, I electronically served the foregoing document on counsel of record for the Defendant through the Court's CM/ECF system.


*/s/ Anthony I. Paronich*
Anthony I. Paronich