UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW JAMES MCGONIGLE,<br>*on behalf of himself and*<br>*others similarly situated*,<br><br>    Plaintiff,<br><br>v.<br><br>TRANSFORM SR BRANDS LLC<br><br>    Defendant. | Civil Action No.: 1:25-cv-01674 |

**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**

The Plaintiff files this Notice of Supplemental Authority to the Plaintiff's Opposition to Defendant's motion to dismiss to advise the Court of further case development relevant to the motion following the filing of the Plaintiff's opposition on July 13, 2025. *See* ECF No. 24.

Decisions that rely on the Supreme Court's decision in *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*, continue to *uniformly* hold that a cellular telephone can be residential. This includes decisions beyond *Wilson v. Hard Eight Nutrition, LLC*, Civil Action No. 25-cv-144-AA (D. Or.). *See* ECF No. 24.

First, in *Isaacs v. USHealth Advisors, LLC*, No. 3:24-cv-00216-LMM, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025) held:

> Defendant's interpretation of a residential subscriber ignores the fact that "residential" modifies "subscriber," meaning that the definition is tethered to a type of *person* rather than a type of *technology*. See Nielsen v. Preap, 586 U.S. 392, 407–08 (2019) ("Because words are to be given the meaning that proper grammar and usage would assign them, the rules of grammar govern statutory interpretation unless they contradict legislative intent or purpose." (cleaned up)). And although

1

> Defendant points out that Congress has occasionally used the term "cellular telephone service" and could have done so here if it intended for the TCPA to cover cell phones, Defendant overlooks the fact that Congress has also used the term "residential telephone *line*" elsewhere in the TCPA… the Court also notes that Plaintiff's interpretation of "residential subscriber" comports with the overall purpose of the TCPA. As the Eleventh Circuit has observed, the TCPA is designed to protect residential privacy, a government interest articulated in the legislative history of the Act. Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1258 (11th Cir. 2014) (quoting Maryland v. Universal Elections, Inc., 729 F.3d 370, 376–77 (4th Cir. 2013)). Regardless of whether a person receives a call to their home phone or a personal cell phone, the negative impact to their residential privacy remains the same. Defendant's interpretation of the TCPA would yield strange results, protecting the privacy interests of a landline subscriber but not a cell phone subscriber—even when the cell phone is the sole phone for home use, as is increasingly the case. In other words, Defendant's interpretation would tie residential privacy interests to an obsolete and disappearing phone technology. Thus, Plaintiff's interpretation of the TCPA aligns with both the plain text and the objectives of the TCPA.

*See* <u>Exhibit 1</u>.

Also, in *Ferrell v. Colourpop Cosmetics, LLC*, 2025 U.S. Dist. LEXIS 140893 (C.D. Ca.) the Court denied a motion to dismiss also stating:

> Starting with the plain language of the statute, § 227(c) confers on the FCC the obligation to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c). In 1991, when the TCPA was enacted, Webster's Dictionary defined "residential" as "used as a residence or by residents." *See Wilson v. Hard Eight Nutrition LLC*, No. 6:25-cv-00144-AA, 2025 U.S. Dist. LEXIS 122504, 2025 WL 1784815, at *5 (D. Or. June 27, 2025) (quoting *Residential*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY). In the context of the statute, the word "residential" modifies the phrase "telephone subscribers," requiring courts to look to whether the telephone subscription is for "residential" use in [*17] the home, or for another purpose, such as business. This distinction between "residential subscribers" and "business subscribers" is the same one drawn elsewhere in the statute. *See* 47 U.S.C. § 227(a)(2)(A). Thus, the term "residential telephone subscribers" can be understood to refer to "individuals, subscribers, who make regular payments to *use* telephone

2

service at home, that is, people who use a telephone for a personal or private purpose." *Wilson*, 2025 U.S. Dist. LEXIS 122504, 2025 WL 1784815, at *5. Under the plain language of the statute, it is the *use* of the phone, not the technology underlying the phone, that determines whether the phone qualifies for protection. This interpretation is consistent with the statutory focus on "privacy rights," because the intrusion on telephone subscribers' privacy would be the same when a call is made to any personal phone used in the home, whether wireline or wireless.

The congressional purpose in enacting the TCPA also supports this construction. *See United States v. Hanousek*, 176 F.3d 1116, 1120 (9th Cir. 1999) ("Particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme." (citation omitted)). The purpose of the TCPA is to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, [*18] automated telephone calls to the home." S. Rep. 102-178, at 1968 (1991). Thus, Congress was principally concerned with unwanted intrusions into the home. Categorizing phones based on their particular use— whether residential or business—rather than the transmission technology that underpins the phone, would serve this purpose by ensuring that phones used within the home are protected from intrusion. A contrary interpretation "would protect the privacy interest of a home landline subscriber but not a home cellular subscriber— even when a cell phone is the sole phone for home use, as is increasingly the case." *Wilson*, 2025 U.S. Dist. LEXIS 122504, 2025 WL 1784815, at *6.

Moreover, while the Court is not bound by the FCC's interpretation of the statute, it must still "afford[] appropriate respect to the agency's interpretation." *McLaughlin*, 145 S. Ct. at 2015. Indeed, *Loper* reaffirmed precedents requiring courts to give "deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." *Loper*, 603 U.S. at 388. Respect for the FCC's interpretation is particularly warranted here.

See Exhibit 2.

Next, in *Radvansky v. Bubolo Med., LLC*, 2025 U.S. Dist. LEXIS 158564 (N.D. Ga.), the Court denied a motion to dismiss stating:

3

> The TCPA authorized the FCC to create a single, national data base of telephone numbers for "residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c). Under this authority, the FCC prohibits telephone solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). Therefore, to have a claim here Plaintiff must be "a residential telephone subscriber."
>
> Defendant cites caselaw from District Courts in other Circuits that have concluded that the TCPA does not encompass cellular telephones. Doc. No. [12-1], 13-15. However, this Court agrees with the <u>Isaacs</u> decision in which Judge May concluded that the type of technology—i.e., cellular or landline—is not determinative. <u>Isaacs</u>, No. 3:24-cv-00216-LMM, 2025 U.S. Dist. LEXIS 152625, 2025 WL 2268359, at *3.
>
> Here, Plaintiff alleged that he uses his cellular telephone as his personal residential telephone number and does not use it for business or commercial purposes. Doc. No. [1], ¶¶ 9-10. Therefore, this Court concludes that Plaintiff is a "residential telephone subscriber" regardless of the type of technology he relies on for receiving and making personal residential calls. As such, the fact that the solicitations to a telephone number on the do-not-call registry came to a cellular telephone does not preclude Plaintiff's claim for a violation of the TCPA.

*See* <u>Exhibit 3.</u>

Finally, in *Harriel v. Bealls, Inc.,* 2025 U.S. Dist. LEXIS 158157 (M.D. Fl.), the Court denied a similar motion to dismiss stating:

> Defendant's sole argument for dismissal is that Plaintiff cannot bring suit under 47 U.S.C. § 227(c) because the text messages were sent to a cellphone rather than a "residential telephone." In support, Defendant points to the use of "residential" - as opposed to "cellular" or "wireless" - throughout § 227(c) and its implementing regulation. *See, e.g.*, 47 U.S.C. § 227(c)(1) ("[T]he Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights."); 47 C.F.R. § 64.1200(c)(2) (providing that that no one [*4] shall initiate a telephone solicitation to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ."). Defendant additionally reasons that because Congress referenced cellular devices at other points in the TCPA, its exclusion from §227(c) must be understood as intentional.
>
> But the FCC thinks otherwise. In a 2003 report and order, the FCC explained that it would "presume wireless subscribers who ask to be put on the [do not call

4

registry] to be 'residential subscribers.'" *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14039 (2003). In so doing, it reasoned that "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections." *Id.* As a result, courts have routinely adopted this interpretation. *See Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 (S.D.N.Y. 2024) ("Numerous courts have applied the presumption the FCC incorporated into its TCPA regulations, and held that an individual who registers her cellphone with the Do Not Call Registry is a residential telephone subscriber.") (collecting cases).

Defendant responds by emphasizing that the Court is no longer required to give deference to the FCC's interpretation, relying on the Supreme Court's recent decision in *McLaughlin [*5] Chiropractic Associates, Inc. v. McKesson Corporation*, which explained that "[d]istrict courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." 145 S. Ct. 2006, 2015, 222 L. Ed. 2d 405 (2025) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)).

While the Court acknowledges the changing landscape concerning deference owed to agency interpretation, it nevertheless finds the FCC's interpretation persuasive and accurate in this case. *See Loper Bright*, 603 U.S. at 371 ("Courts exercising independent judgment in determining the meaning of statutory provisions, consistent with the APA, may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes."). The Court agrees with Plaintiff that the application of § 227(c) to cellphone subscribers comports with overarching intent and structure of TCPA. *See Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017) ("Although it is true that the TCPA placed particular emphasis on intrusions upon the privacy of the home in 1991, this expression of particular concern for residential calls does not limit—either expressly or by implication—the statute's application to cell phone calls."). And, on a practical level, [*6] the FCC's interpretation recognizes the plain reality that most people "exclusively use cellphones in their residence and do not own landline phones." *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 U.S. Dist. LEXIS 8811, 2024 WL 184449, at *7 (M.D. Pa. Jan. 17, 2024).

*See* Exhibit 4.

Dated: August 24, 2025

PLAINTIFF,
By his attorney

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com
**Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

On August 24, 2025, I electronically served the foregoing document on counsel of record for the Defendant through the Court's CM/ECF system.

*/s/ Anthony I. Paronich*
Anthony I. Paronich